No. 18,744.

MRS. J. E. BISBY, *Appellant*, v. FRANK J. QUINBY et al.
and W. H. DODDERIDGE, Interpleader, *Appellees.*

SYLLABUS BY THE COURT.

EQUITABLE LIEN—*Surety on Promissory Note Awarded Lien on
Certain Lands of His Principal Superior to that of a Judg-
ment Creditor.* A surety was induced to sign a note by an
agreement that the land to be purchased with the proceeds
should be sold and the note paid. Failing to secure per-
formance of the agreement, he obtained from the principal,
who had disposed of the land in exchange for other land, an
order upon the holder of the legal title to the latter to pay
such surety all money received from the sale thereof above a
certain amount, which order was assented to by such holder.
In this situation a judgment creditor brought suit to subject
the land to her judgment against the principal—the real
owner—in which action the surety intervened and, paying off
the note in full, sought a lien on the land to secure himself.
The trial court found that the legal title was held for the use
and benefit of the principal, who owned the land—that the
surety was entitled to a lien thereon and the judgment holder
to the next lien, and ordered the land sold to satisfy the
claims against it. *Held*, that such surety was entitled to the
relief granted him.

Appeal from Morris district court; ROSWELL L.
KING, judge. Opinion filed April 11, 1914. Affirmed.

*Clarence A. Crowley,* of Council Grove, for the ap-
pellant.

*Lee Monroe,* of Topeka, and *W. S. Roark,* of Junc-
tion City, for the appellees.

The opinion of the court was delivered by

WEST, J.: In December, 1909, the plaintiff recovered
a judgment against defendant Quinby for $2300 and
interest for money he had previously borrowed of her.
He was engaged in the milling business at Council
Grove, and in September, 1906, he borrowed $7000 of
the Farmers and Drovers Bank in order to meet certain

indebtedness at the bank and enable him to procure some Nebraska land in exchange for his mill property, giving two notes of $3500 each, one signed by defendant Dodderidge and the other by Quinby's father-in-law, S. C. Houck. The court found that to induce Dodderidge to become surety Quinby agreed that the Nebraska property was to be sold and the proceeds applied to the payment of the note signed by Dodderidge. Quinby, however, traded the Nebraska land for Colorado land, and so disposed of that as to become the owner of 320 acres in Morris county, Kansas, subject to a mortgage, placing the latter property in the hands of W. D. Houck, who mortgaged it for $5000 to pay off the incumbrance. Before the plaintiff recovered her judgment, Quinby gave Dodderidge a written order directing W. D. Houck, upon sale and settlement of the farm, to pay Dodderidge all money received above the mortgage of $5000 and $3500 paid to S. C. Houck, "the total amount to be retained by you $3500 above the mortgage." This order was presented to Houck by Dodderidge and assented to by the former. In September, 1910, Dodderidge paid his note in full. The note signed by S. C. Houck has been paid. The plaintiff brought this action to subject the land to the lien of her judgment, in which action Dodderidge intervened. The court awarded Dodderidge an equitable lien on the Morris county land to secure the amount of the debt paid by him, and gave the plaintiff a lien thereon secondary and inferior to that of Dodderidge, both subject to the mortgage of $5000, and ordered the land sold and the proceeds applied accordingly. The plaintiff appeals and insists that she should be given a lien prior to that of Dodderidge. As the Houck note has been paid, the plaintiff's lien appears to be subordinate only to the mortgage of $5000 and the amount of the Dodderidge note, but what the value of the 320 acres of land is and what security this leaves the plaintiff the record does not show.

The plaintiff contends that as she discovered and unearthed the fraud by which Quinby was covering up the title to the land, and secured an express finding that it was held by Houck for the use and benefit of Quinby, her lien should not be postponed for the claim of Dodderidge, who had nothing but a written order to pay him out of the proceeds when the land should be sold, and that at any rate a lien on the proceeds is not a lien on the land. Dodderidge, failing to be reimbursed out of the Nebraska land, secured the written order on Houck to pay upon the sale and settlement of the Kansas land, so that whatever equitable right this agreement and this order gave was vested in him before the plaintiff had recovered her judgment against Quinby. It is argued that Dodderidge must have known that Houck was holding the title for Quinby, and, resting upon his secret and unrecorded agreement and order, he permitted the plaintiff to expose the fraud already known to himself, and should not now be allowed to profit by the advantage he had thus secretly gained. But it might be said that Dodderidge in reality furnished a part of the consideration for the land which in the first instance was to be sold and his note paid from the proceeds. Tracing the deals and their proceeds into the Kansas land, he obtained the order in question, which being given by Quinby, the real owner, and accepted by Houck, the holder of the paper title, was good as between himself and them, and the property was thus burdened when the plaintiff became a judgment creditor of Quinby. Hence, when she procured the application of her lien to the land in question it was only to such interest therein as Quinby actually had. It is asserted and denied that Dodderidge, after his intervention, did much to get at the real facts, and thus assisted the plaintiff in making the truth known. At all events it is clear that if we treat the situation as one giving him an equitable lien it was prior to the judgment lien of the plaintiff. True, he did not liqui-

date the note and thus actually pay part of the purchase price until after this action was brought to subject the land to the plaintiff's judgment, but he was entitled to security for his liability on the note, and by such payment he made certain the fact and amount of Quinby's liability to him, and the plaintiff was in no wise harmed thereby. It is stated that Quinby agreed to place the title to the Nebraska land in Dodderidge, but we find no such evidence or finding in the record, and must, therefore, consider the matter in the light merely of the agreement to sell and pay out of the proceeds. Authorities are cited for and against the theory of an equitable mortgage. While the name is not important, probably the right of Dodderidge to look to the land or its proceeds might well be called an equitable lien to secure his reimbursement to the extent that he had in effect furnished the money to pay for the land.

"In Courts of equity the term 'lien' is used as synonymous with a charge or incumbrance upon a thing, where there is neither *jus in re*, nor *ad rem*, nor possession of the thing. The term is applied as well to charges arising by express engagement of the owner of property, and to a duty or intention implied on his part to make the property answerable for a specific debt or engagement." (1 Jones on Liens, 2d ed., § 28.)

"It follows, therefore, that in a large class of executory contracts, express or implied, which the law regards as creating no property right nor interest analogous to property, but only a mere personal right and obligation, equity recognizes, *in addition to the obligation,* a peculiar right *over* the thing with which the contract deals, which it calls a 'lien,' and which, though not property, is analogous to property, and by means of which the plaintiff is enabled to follow the identical thing, and to enforce the defendant's obligation by a remedy which operates directly upon that thing." (1 Pomeroy's Equity Jurisprudence, 2d ed., § 166.)

In one case the maker of a deed of trust to secure certain promissory notes agreed with the holder that in consideration of his forbearance in foreclosing the

land should be cultivated in cotton for one year, one-half to go to the holder to be accredited on the notes, giving a lien on the whole crop for the payment of one-half. During the year the maker died insolvent, and it was held that the holder of the mortgage had an equitable lien on the cotton superior to that of the creditors of the maker. (*Kirksey, Adm'r, v. Means,* 42 Ala. 426.) In another case a society of Shakers, an unincorporated community holding its property in common, had given a promissory note, executed by its trustees, in return for money which went to increase the funds of the society. It was held by the United States court of appeals of the sixth circuit that the holder was entitled to an equitable lien on the property of the Shakers. (*Society of Shakers v. Watson,* 68 Fed. 730, 15 C. C. A. 632, 163 U. S. 704, 16 S. Ct. Rep. 1206, 41 L. Ed. 313.) In the opinion Severens, J., speaking for judges Taft, Lurton and himself, said:

"It is to such a case that the jurisdiction of a court of equity is peculiarly applicable. By the flexibility of its procedure to fix the liability and the scope of the remedies it is authorized to employ for its satisfaction, it can furnish complete relief where the remedy of the common law is neither plain nor adequate. . . . The note was not effectual against anything but this changing body, and that only by supposing it to be intended to be a charge against the property which all the members of the society had concurred in putting in a common mass in the hands of the trustees of the society. . . . And the consideration of the note went to augment the fund upon which it is sought to charge it." (p. 738.)

It is said of an equitable lien:

"It is not a right of property in the subject-matter of the lien nor a right of action therefor, nor does it depend upon possession; but is merely a right to have the property subjected to the payment of a debt or claim, and it applies as well to charges arising by express engagement of the owner of property as to a

duty or intention implied on his part to make the property answerable for a specific debt or engagement." (25 Cyc. 662.)

See note to *Bell v. Pelt*, 51 Ark. 433, 11 S. W. 684, 14 Am. St. Rep. 57, in 4 L. R. A. 247; *Foster v. Bank*, 71 Kan. 158, 80 Pac. 49; *Charpie v. Stout*, 88 Kan. 318, 128 Pac. 396; *Mason v. Saunders*, 89 Kan. 300, 131 Pac. 562; 3 Words & Phrases, pp. 2440, 2441.

While the case is not free from doubt, we conclude and hold that under the broad principles of equity the trial court was justified in ruling as it did.

The judgment is therefore affirmed.