No. 19,334.

L. W. CLAPP et al. v. C. F. MAURER et al. (J. B. BERK AND HETTY BERK, defendants and cross-petitioners, *Appellants;* RUSSELL MOORE, defendant and cross-petitioner, *Appellee*).

SYLLABUS BY THE COURT.

DEED—*"President"—Descriptio Personæ—Mortgage for Purchase Money—Equitable Lien.* Where a deed conveys property to "J. E. Liggett, president of the National Home Building Company," and the grantee gives back a mortgage as part payment for the property signed "The National Home Building Company, J. E. Liggett, President," the deed and mortgage are complemental parts of the same bargain; and upon an adjudication that such deed conveyed the property to J. E. Liggett personally, equity requires the recognition of the mortgage against one who claims under a quitclaim deed from J. E. Liggett.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed March 6, 1915. Affirmed, subject to determination by trial court of amount due.

*John W. Adams,* and *George W. Adams,* both of Wichita, for the appellants.

*Fred B. Stanley, Claude C. Stanley, Benjamin F. Hegler,* and *Russell Moore,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is a dispute over the ownership of a town lot in Wichita. In 1903, Hetty Berk and J. B. Berk, who then owned the property, conveyed to " J. E. Liggett, president of the National Home Building Company," and received therefor $200 in cash and a mortgage to secure the payment of the balance, $150, executed as follows: "The National Home Building Company, J. E. Liggett, President." Not long after, the company went into the hands of a receiver, and the receiver gave a quitclaim deed to the Berks to satisfy the mortgage, leaving them in possession. In September, 1907, L. W. Clapp received a tax deed to the property from Sedgwick county, and in August, 1908, Clapp brought suit to quiet his title, and judgment was entered in his favor October 6, 1908, against Hetty Berk, J. B. Berk and J. E. Liggett. On October 15, 1909, Clapp gave the Berks a quitclaim deed to the property. On April 17, 1909, J. E. Liggett gave one S. S. Allen a quitclaim deed to the same property; and Allen in turn gave a quitclaim deed to Russell Moore on March 10, 1911. Within three years after the judgment against Liggett and the Berks, Moore brought proceeding to open up the judgment, and issues were joined between him and the Berks. The trial court found that Moore held the legal title; that the original deed from the Berks to Liggett was to him personally; that the Berks' mortgage had been satisfied; that the tax title of Clapp was void, and awarded the Berks a lien for taxes paid.

Counsel for the Berks assign various errors, but the only one worthy of note involves the finding of the

court that the mortgage of the Berks had been satisfied. In what manner had it been satisfied? Certainly not by the receiver's quitclaim deed since the court held that the Berks' conveyance in 1903 was to Liggett personally. In view of that finding, the receiver's deed conveyed nothing. Neither can it be declared that the judgment of Clapp against the Berks and Liggett bars the Berks' mortgage, because that judgment was opened up and the last grantee in the chain of quitclaim conveyances under Liggett was let in to defend. It does not appear that the Berks filed any formal motion to have the judgment against them opened up to let them in, but that was a mere formality in this case. They were let in to defend, and the lawsuit was fought out between the Berks and Liggett's grantee. No deeds of general warranty or the rights of innocent purchasers are involved. The issues were the same as if the original parties, the Berks and Liggett, were litigating over their original bargain with no subsequent transactions to complicate it. (*Johnson v. Williams,* 37 Kan. 179, 14 Pac. 537; *Smith v. Rudd,* 48 Kan. 296, 29 Pac. 310.) Liggett's deed was declared to be a conveyance to him personally, and that the addition of his official title and relationship to the building company was mere *descriptio personæ.* (*Love v. Love,* 72 Kan. 658, 83 Pac. 201; 10 Cyc. 1021; 13 Cyc. 625.) Now what about the other part of this transaction? It may be conceded that considered as a mortgage from the company the execution was defective. But the court finds that the deed was to Liggett personally; and in equity it must be held that the entire transaction was with Liggett; and the mortgage, imperfectly executed though it be, must be considered an equitable lien on the property for the balance of the purchase money as against Liggett or his grantee under a quitclaim deed. Certainly the Berks did not intend to convey their property to Liggett and take back a mortgage on that property from another party who had no interest in it.

Simple justice requires us to hold that the deed and the mortgage were complemental parts of the same bargain, and the grantee of the deed must be considered the grantor of the mortgage. (39 Cyc. 1296, 1297.) Liggett could not be heard to contend that he was simply perpetrating a fraud on the Berks; that it was his deliberate purpose to secure a valid deed to himself and to give back to the grantors a defective and unenforceable mortgage in the name of his company as part consideration for the deed to himself.

"Where the transaction is in its nature and circumstances such as to give one party an inequitable or unconscionable advantage over the other, equity, inferring fraud, will not only decline to lend its aid to the party seeking to enforce such claim, but will often actively interfere to give relief to the other party. . . . While it is said that equity has general jurisdiction, concurrent with law, for the enforcement of liens, equity nevertheless recognizes and enforces certain liens not recognized at law. Of these the most frequent species are the lien of a vendor for unpaid purchase-money, and the so-called equitable mortgages. Besides enforcing liens created by express contract, equity, while disclaiming the power to create a lien in the absence of contract, has nevertheless protected equitable rights by impressing liens in the absence of express contract and contrary to the rules of law." (16 Cyc. 85, 88.)

On one point the record is not clear. In the mortgage the obligation to the Berks is $200; in the exhibits the sum due appears to be $150 and interest. The proper amount can be determined by the court below; and this cause is remanded to the district court with instructions to ascertain the exact sum due under the mortgage and to award Hetty Berk and J. B. Berk a lien on the property for the amount so determined, and thereupon the judgment will be affirmed.