No. 33,140

Furst & Thomas (Frank E. Furst and Fred G. Thomas, partners, etc.), *Appellants*, v. (L. B. DeWitt, S. B. Smith, C. H. DeWitt, *Defendants*), H. G. Henderson, *Appellee.*

(65 P. 2d 567)

Opinion filed March 6, 1937.

*James A. Cassler* and *L. H. Ruppenthal*, both of McPherson, for the appellants.

*Samuel E. Bartlett*, of Ellsworth, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action on a written contract of guaranty. The defense was lack of consideration for the guaranty. The jury

answered special questions and returned a verdict for defendant, on which judgment was rendered. Plaintiffs have appealed.

The facts are not seriously controverted and may be stated as follows: Plaintiffs, residing at Freeport, Ill., are partners engaged in the wholesale business of distributing certain proprietary medicines, flavoring extracts, spices, toilet articles and other household necessities. L. B. DeWitt, of Wilson, Kan., had been purchasing such articles on account from plaintiffs and selling them at retail, and had become indebted to plaintiffs. Perhaps all his business transactions with plaintiffs had been under sales agreements similar to the one involved in this action, but if so, such prior sales agreements were not pleaded in this action nor offered in evidence prior to the hearing of the motion for a new trial. In March, 1931, the parties executed an instrument in writing, denominated a sales agreement, in two parts, the first being the agreement between plaintiffs and L. B. DeWitt and the second part dealing specifically with the guarantors. We quote or state the pertinent parts of this instrument. The sales agreement between the plaintiffs, called Furst & Thomas, and L. B. DeWitt, called the dealer, recited that:

"The dealer has been engaged in the business of retailing products handled by Furst & Thomas and is now indebted to them for products previously bought on credit, and . . . wishes to continue in business buying products from Furst & Thomas on credit as heretofore and agrees to pay his account to them, . . . including the balance for goods previously bought and the wholesale price of all products hereafter purchased . . . in installments satisfactory to them. . . . Therefore, Furst & Thomas agree, upon acceptance of this agreement, to sell to the said dealer their products on credit at their regular wholesale prices . . . but . . . shall have the right to limit the amount of credit to be extended to the said dealer and to refuse to fill his orders in whole or in part if in their judgment his payments on account are not satisfactory. . . . Either party shall have the right to terminate this agreement by giving written notice to the other party and upon its termination from any cause by either party the dealer agrees to pay within two months the balance due Furst & Thomas on account; provided that if the dealer fails to make regular remittances or attempts to avoid settlement of his account the balance shall become immediately due and payable at the option of Furst & Thomas."

It recited the instrument contained the entire contract between the parties, that it was subject to acceptance by plaintiffs at their home office, and when so accepted should be in force, unless sooner terminated, until December 31, 1931. This was signed by the dealer, L. B. DeWitt. Continuing, the instrument reads:

"The undersigned sureties, having acquainted ourselves with the terms and conditions of the above agreement in consideration of the payment of $1, receipt whereof is hereby acknowledged, and in further consideration of Furst & Thomas extending credit to the above-named dealer do jointly and severally guarantee payment to Furst & Thomas for all products sold by them on credit to him and the balance remaining unpaid at date of acceptance of this agreement for products previously bought by him, . . . hereby waiving acceptance and all notice."

They further agreed that the written acknowledgment of the dealer of the amount due on the account should be binding, and that after two months from the termination of the agreement by either party and the nonpayment of the account by the dealer, "this guaranty shall become absolute as to the amount then due from him and we shall be primarily liable for the payment of same and upon demand we promise to pay the amount to Furst & Thomas." This part of the instrument was signed by S. B. Smith, C. H. DeWitt and H. G. Henderson.

After being executed by the dealer and the guarantors in Kansas it was forwarded to plaintiffs and accepted in writing by them on March 26, 1931, and plaintiffs immediately gave notice of that fact by registered mail to each of the signers thereof. On April 20, 1931, L. B. DeWitt remitted $25 to plaintiffs and ordered goods which invoiced $26.05 shipped to him. The heading of this order, as all other orders sent by DeWitt to appellants, reads:

"Furst & Thomas, Freeport, Illinois:

"Gentlemen: Ship me at once the following products and charge to my account according to terms of agreement."

The sum received by plaintiffs from L. B. DeWitt was credited to his account and the amount of the invoice of his order was charged to his account. The goods were shipped as directed. The heading of the invoice, as well as all invoices of goods shipped him by plaintiffs, reads:

"Invoice, Furst & Thomas, Distributors F. W. McNess' Sanitary Preparations, Freeport, Illinois.

"We charge your account with the following according to the terms of your sales agreement."

On May 11 L. B. DeWitt remitted $25 and ordered merchandise invoicing $25.50. On June 1 he sent $30 and ordered goods invoicing $29.50, and on June 24 he sent $30 and ordered goods invoicing $29.10. All of these remittances were credited to his account and all of the invoices were charged to his account. On September 21,

1931, L. B. DeWitt, having made no payments on account nor ordered any merchandise since June 24, plaintiffs terminated the sales agreement in accordance with the provisions thereof and gave written notice of that fact by registered mail to all the parties whose names appeared on the instrument. On that date there was a balance due plaintiffs from DeWitt on his account of $820.16. On November 30, 1931, plaintiffs, by registered mail, made a request, or demand, for payment of the account on each of the parties who had signed the agreement. Payments not having been made, this action was brought.

Plaintiffs' petition set forth the material facts above stated and among other things alleged that at the time plaintiffs accepted the agreement, March 26, 1931, L. B. DeWitt was owing them a balance on account, for goods previously sold, in the sum of $821.36; "that thereafter the said L. B. DeWitt purchased merchandise to the total sum of $108.80, and paid to the said plaintiffs the sum of $110 cash;" that there was a balance of $820.16, for which they prayed judgment. The defendants, L. B. DeWitt, S. B. Smith, and C. H. DeWitt, made no defense. The answer of the defendant H. G. Henderson contained a general denial and alleged that the agreement relied upon by plaintiffs, whereby it was alleged that this defendant and others "guaranteed certain payments, if the same was so signed by the said parties, was wholly without consideration; that the alleged consideration of one dollar therein mentioned was never at any time paid and was never expected to be paid; that the said plaintiffs never at any time subsequent to the alleged date thereof extended credit to the said L. B. DeWitt or to any other person on account thereof and wholly failed and refused so to do; that no credit was ever extended to the said L. B. DeWitt subsequent to the date of said alleged agreement; that on account of the premises herein stated that there was and is a total failure of consideration for said alleged guaranty." There were further allegations that defendant was induced to sign the instrument because of false and fraudulent representations made him by plaintiffs, or their agent, to the effect that at that time L. B. DeWitt was not indebted to plaintiffs. On this point no evidence was produced, and apparently that defense was abandoned. The reply was a general denial. On the trial plaintiffs produced by deposition evidence on their behalf, as hereinbefore recited. In the taking of these depositions it was brought out that on the orders sent by L. B. DeWitt in April, May and June of 1931

there was a penciled notation on each of them as to the amount of the cash remittance which accompanied the order. There is no evidence as to who made these notations, or the purpose of them. H. G. Henderson testified in his defense that he was not paid the one dollar mentioned in the written agreement of guaranty by L. B. DeWitt, or by the plaintiffs, or any one for them. That was the substance of his testimony. Plaintiffs' motion for a directed verdict was overruled. Three special questions were submitted to and answered by the jury:

"1. Was the defendant L. B. DeWitt indebted to the plaintiff on or about the 26th day of March, 1931? A. Yes.

"2. If you answer the above question 'yes,' what was the amount of the indebtedness? A. $821.36.

"3. Did the plaintiff extend to L. B. DeWitt credit after the 26th day of March, 1931? A. No."

Plaintiffs moved to set aside the jury's answer to special question No. 3 on the ground that it was inconsistent with and contrary to the evidence, and also moved for a new trial. Both motions were overruled. Appellants contend the court erred in refusing to set aside the answers made by the jury to special question No. 3. We are unable to find in the record evidence to sustain that answer. Appellee argues that plaintiffs extended no credit for the goods ordered by L. B. DeWitt in April, May and June of 1931 for the reason that accompanying each of those orders was a payment of substantially the amount of the invoice of the goods ordered, being a little less in two instances and a little more in two others, and that the four remittances aggregate a little more than the four invoices. Appellee further points out that plaintiffs in their petition state that since making the agreement DeWitt "purchased merchandise to the total sum of $108.80 and paid to the said plaintiffs the sum of $110 cash." Neither of these facts establishes that no credit was extended on those occasions. DeWitt was indebted to plaintiffs and sent them money which was applied upon his account. In each instance he was advised that the amount of the invoice was charged to "your account . . . according to the terms of your sales agreement." Hence, DeWitt was bound to know and understand that the goods were sold to him on account in accordance with his sales agreement, and this appellee is not in position to say otherwise.

In addition to continuing to sell merchandise to L. B. DeWitt on account after the agency agreement which included the written

guaranty was accepted by them in March, 1931, plaintiffs extended credit to DeWitt on what he owed them at the time this agreement was signed. They took no steps to collect what was then owing until after the agency agreement of March, 1931, was terminated in September of that year and for more than sixty days thereafter. Appellee was bound to know that this credit was being extended, for the agency agreement recited DeWitt was indebted to plaintiffs for products previously bought on credit, and in the part of that agreement specifically devoted to the guaranty, signed by appellee, it was recited that he had acquainted himself with the terms and conditions of the agreement. It seems clear under this record that there is no substantial evidence to sustain the jury's answer to special question No. 3.

Guaranty, like other contracts, should be supported by consideration. (28 C. J. 915; 12 R. C. L. 1076; *Briggs v. Latham*, 36 Kan. 205, 13 Pac. 126.) It may be conceded, as appellee argues, that the one dollar recited in the agreement as having been paid would be insufficient consideration to support the contract of guaranty when it was shown never to have been paid, nor intended to be paid. (Restatement, Contracts, § 82.) Our statute (G. S. 1935, 16-107) imports consideration to all contracts in writing signed by the party bound thereby. One who signs a contract and contends there was no consideration therefor has the burden of proving lack of consideration. (*Fidelity State and Savings Bank v. Franz*, 128 Kan. 500, 278 Pac. 718.) In such a case lack of consideration is an affirmative defense. (*Pratt v. Cook*, 10 Kan. App. 144, 62 Pac. 438.) It is not essential that a written contract of guaranty state the consideration. (*Stearn v. Deutsch*, 9 Kan. App. 218, 59 Pac. 687.) The consideration need not be one passing from the guarantee to the guarantor. A benefit to the principal debtor or a detriment to the creditor is sufficient. (*Woodman v. Millikan*, 126 Kan. 640, 270 Pac. 584.)

Unless the defense of lack of consideration was supported by substantial competent evidence it was the duty of the trial court to direct a verdict for plaintiff. (*Land Co. v. Probst*, 92 Kan. 103, 139 Pac. 1024; *Drake v. Seck, Adm'x*, 116 Kan. 717, 229 Pac. 67; *Simpson State Bank v. Downey*, 127 Kan. 828, 275 Pac. 153.)

Appellee cites *W. T. Rawleigh Co. v. Toms* (La. App.), 153 So. 595. That case turned in part on a state statute requiring serious consideration. It is pointed out the statute embodies the principle of the civil law, which requires as a consideration something sub-

306

stantial as compared to the obligation assumed, as distinct from the common-law rule which requires a nominal consideration only to support a contract of guaranty. In that case, also, further credits had been refused. That is not true here. We note that case is distinguished in *Texas Co. v. Couvillon* (La. App.), 167 So. 155, where an indirect benefit to the guarantor was held sufficient consideration. Both cases sustain the view that one who pleads lack of consideration for the guaranty has the burden of proving no consideration. Upon the record before us and the authorities above cited we are compelled to hold that plaintiff's motion for a directed verdict should have been sustained.

The judgment of the court below is reversed with directions to render judgment for plaintiffs.