No. 41,324

W. E. HILL, *Appellant,* v. MYRTLE BESSIE HILL, (Revived in the name of Pearl G. Garriott, Administratrix of the Estate of Myrtle Bessie Hill, Deceased), *Appellee.*

(345 P. 2d 1015)

 Opinion. filed November 7, 1959. 

*Elvin D. Perkins,* of Emporia, argued the cause, and *Everett E. Steerman,* also of Emporia, was with him on the brief for appellant.

*Roscoe W. Graves,* of Emporia, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action in which the holder (payee) of a promissory note seeks to. establish the existence of an equitable mortgage and to foreclose such equitable mortgage subjecting the property so mortgaged to the payment of the debt.

The basic question is whether the transactions between a decedent maker of the note and his son, the payee, create an equitable mortgage in favor of the son against the property described on the reverse side of the note.

W. W. Hill, a resident of Lyon County, Kansas, died on the 15th day of October, 1952. He left surviving him his widow, Myrtle Bessie Hill, who was the original defendant in this action in the district court of Lyon County, Kansas, and W. E. Hill, also known as William Elmer Hill, the appellant herein, his son by a previous marriage. Both W. W. Hill and his wife, Myrtle Bessie Hill, were in poor health prior to February, 1952, and by reason of their health, planned to move from the farm to a house in Emporia, Kansas. As a part of the purchase price for the house which was purchased in Emporia, W. W. Hill negotiated a loan from his son, the appellant herein, in the sum of $2,500, and executed and delivered to the appellant a promissory note for that sum. The note reads:

"$2500.00 February 20, 1952
"On or before Feb. 20-1957 or on demand after date I promise to pay to the order of W. E. Hill or his Estate Twenty Five Hundred Dollars_____
No DOLLARS PAYABLE AT Emporia State Bank—with interest at 5% per annum —VALUE RECEIVED.
No.____ DUE Feb. 20-1957 W. W. HILL
 R. 4, Emporia, Kans."

On the reverse side of the note appeared the following:

"This note is given in payment for a loan of $2500.00 in cash to make first payment of Arthur Glaze and Marjorie Glaze property—bought by W. W. Hill—Lot 21—in Copely Addition to City of Emporia—House No. 115 S. Constitution St—Emporia, Kans. it is hereby agreed that the Holder of this

note shall have $2500.00 interest in above described Property—besides his Legal interest as heir to Estate of W. W. Hill.

"I hereby agree to this agreement—2-20-1952

W. W. Hill

"Paid $750.00 Oct. 15, 1952 from acct. at Columbia Bld & Loan Co.

Wm. E. Hill"

After the death of W. W. Hill an action was instituted in the district court of Lyon County, Kansas, by W. E. Hill against Myrtle Bessie Hill as defendant, seeking to have the court determine that he was the owner of an equitable mortgage covering the real estate described on the reverse side of the promissory note and asking for the foreclosure of the mortgage and the sale of the property to satisfy the amount due on the note.

The petition, filed on October 23, 1954, alleged the essential facts above related, and further alleged that at the time the money was borrowed and as a part of the consideration for the loaning of said money, W. W. Hill orally covenanted and agreed with the plaintiff (appellant) that he and his wife, the defendant, would execute and deliver to the plaintiff a good and sufficient instrument mortgaging and conveying the described real estate to the plaintiff as security for the repayment of the loan. The petition further alleged that by and with the use of the sum of money loaned by the plaintiff, W. W. Hill purchased the described real estate with a dwelling located thereon, *"and caused the title to said real estate to be conveyed to W. W. Hill and Myrtle Bessie Hill, as joint tenants, with the right of survivorship."* (Emphasis added.)

The petition alleged that after receiving the conveyance of title to the said real estate, W. W. Hill orally advised the plaintiff that the defendant refused to sign and execute a mortgage covering said real estate. By reason of the foregoing allegations the plaintiff alleged he is entitled to and is the owner of an equitable mortgage in and to the described real estate, and has a first, prior and valid lien thereon, securing the repayment of the sum of $2,500, together with interest at the rate of 5% per annum from February 20, 1952, until paid. The petition then alleged:

"8. That on the 15th day of October, 1952, the said W. W. Hill died without having conveyed or otherwise alienated said real estate herein described.

"9. That no part of said sum of money, nor interest thereon, has been paid, except the sum of $750.00 which was paid on the 15th day of October, 1952; that there is now due and owing on said note, the sum of $1750.00 together with interest at the rate of five per cent per annum on $2500.00, from the

20th day of February, 1952, until the 15th day of October, 1952, and interest at the rate of five per cent per annum on $1750.00, from October 15, 1952, until paid.

"10. That the defendant, Myrtle Bessie Hill, has or claims to have some interest or lien upon said mortgaged premises, which interest or lien is subsequent and subject to the lien of the plaintiff; *that no personal claim is being made by the plaintiff against the defendant.*

"WHEREFORE, plaintiff demands judgment adjudging the amount due on said note and mortgage, and adjudging and directing the sale of the premises aforesaid and the payment from the proceeds of said sale of the costs and disbursements of this action, and the amount due the plaintiff as aforesaid, together with interest to the time of said payment, and that the defendant and all persons claiming under her, be barred and foreclosed of all rights, claims, liens and equity of redemption in said mortgaged premises and every part thereof subject only to the right to redeem said premises within eighteen months." (Emphasis added.)

The record discloses a demurrer was filed on October 29, 1954, challenging the petition. This demurrer was pending on the 2nd day of March, 1957, when the defendant, Myrtle Bessie Hill, died. On May 24, 1957, the administratrix of the estate of Myrtle Bessie Hill, Pearl G. Garriott, filed a motion to revive the action in her name and requested until the 5th day of June to answer the plaintiff's petition. The action was thereupon revived by an order of the trial court in the name of the administratrix of the estate of Myrtle Bessie Hill and the administratrix was granted an extension of time in which to file an answer. Insofar as the record discloses the demurrer was abandoned.

The answer admitted that Myrtle Bessie Hill was the wife and widow of W. W. Hill, deceased, and that she refused to sign the note set out in the plaintiff's petition, and further admitted that W. W. Hill died on the 15th day of October, 1952. It placed in issue the execution of the note by W. W. Hill during his lifetime and the giving of an equitable mortgage and alleged that if an equitable mortgage were given by W. W. Hill to the plaintiff, all rights thereunder ceased upon the death of W. W. Hill and the equitable mortgage became a nullity.

As an affirmative defense it was alleged that the plaintiff prior to the filing of this action and on February 13, 1953, filed his claim in the probate court of Lyon County, Kansas, against the estate of W. W. Hill, deceased, for the recovery of the amount allegedly due him under the note in question and that the plaintiff caused said claim to be set for hearing. By reason thereof it is alleged the plain-

tiff elected his remedy to recover on said note from the assets of the estate of W. W. Hill, deceased, and is estopped from now attempting to recover on said note against the property of the defendant, Myrtle Bessie Hill, deceased.

The trial court after hearing all the evidence presented by the parties made the following findings and conclusions:

### "FINDINGS OF FACT.

"1. On February 20, 1952, W. W. Hill executed and delivered to plaintiff his promissory note, payable to plaintiff in the principal amount of $2,500.00.

"2. Prior to the filing of the instant action, plaintiff filed a claim in the Probate Court of Lyon County, Kansas, against the estate of W. W. Hill to recover on the same note that forms the basis of this action.

"3. The real estate in question is not a part of the assets of the estate of W. W. Hill. Title to the same was taken in the names of W. W. Hill and his wife, Myrtle Bessie Hill, in joint tenancy.

"4. W. W. Hill did not agree to give a mortgage on the real estate purchased by him and his wife to secure the payment of the $2,500.00 note.

"5. Plaintiff did not request or demand that W. W. Hill or Myrtle Bessie Hill execute a real estate mortgage covering the real estate in question.

"6. Myrtle Bessie Hill did not know of the existence of the $2,500.00 note executed by her husband.

"7. There was no evidence that the estate of W. W. Hill is insolvent.

### "CONCLUSIONS OF LAW.

"1. G. S. 1949, 59-1303 is not applicable under the facts of this case.

"2. Plaintiff has an adequate remedy at law by prosecuting his claim against the estate of W. W. Hill.

"3. Plaintiff is not entitled to the relief sought in this case."

Attention is directed to paragraphs numbered 4, 5, 6 and 7 of the findings of fact. A careful review of the abstract and counter abstract of the record presented in this case reveals that these findings have been made on the basis of negative evidence. That is, there was no evidence whatever before the trial court to have found one way or the other on any of these matters except finding of fact No. 4 in which the only testimony before the court was that of Goldie Hill, wife of W. E. Hill, to the effect that W. W. Hill did agree to give a mortgage on the real estate purchased when his wife returned from Newman Hospital. Whether an oral agreement to give a mortgage was made by W. W. Hill, as alleged in the petition, becomes immaterial in view of our decision presently to be considered.

Finding of fact No. 1 implies a finding by the trial court that the promissory note in question was given for an adequate con-

sideration. The instrument itself which the trial court found to have been executed and delivered specifically recites that it was given in payment for a loan of $2,500 in cash for the payment on the property in question. Lack of consideration is an affirmative defense which must be asserted and established by the person claiming it. (*Furst v. DeWitt,* 145 Kan. 300, 65 P. 2d 567.)

The record discloses substantial evidence to support the finding that W. E. Hill had advanced $2,500 to W. W. Hill to purchase the property in question. The oral testimony of Goldie Hill is corroborated by documentary evidence in the form of a sight draft on the Eureka Federal Savings and Loan Association in the amount of $2,500, dated February 20, 1952, by W. E. Hill, and a deposit slip showing $2,500 deposited to the account of W. W. Hill on February 20, 1952, in the Emporia State Bank indicating: "Checks as follows: W. E. Hill 2,500.00."

Where the execution and delivery of an instrument in writing has been properly established in the trial court, such as the note here in question, this court on review should make the determination for itself as to the interpretation to be placed upon such documentary evidence. (*Goldberg v. Central Surety & Ins. Corp.,* 145 Kan. 412, 65 P. 2d 302; and *Mathewson v. Campbell,* 91 Kan. 625, 138 Pac. 637.)

The chronological sequence of events relating to the facts in this case, which are either established or uncontroverted, will materially assist in further discussion.

On February 20, 1952, the promissory note of W. W. Hill to W. E. Hill was executed and delivered.

On February 20, 1952, a general warranty deed conveying title to the property described on the reverse side of the note to W. W. Hill and Myrtle Bessie Hill, as joint tenants with right of survivorship, was made and acknowledged (recorded March 6, 1952).

On October 15, 1952, payment of $750 was endorsed on the back of the note.

On October 15, 1952, W. W. Hill died.

On February 13, 1953, W. E. Hill exhibited his demand against the estate of W. W. Hill, deceased, for the balance due on the note by filing his petition for its allowance in the probate court of Lyon County.

On October 23, 1954, the petition was filed commencing this action.

On February 20, 1957, the note in question matured unless it matured prior thereto by reason of the demand feature.

On March 2, 1957, the defendant in this action, Myrtle Bessie Hill, died.

On May 24, 1957, this action was revived on the motion of the administratrix of the estate of Myrtle Bessie Hill, deceased, in her name.

On October 28, 1957, this case was heard in the district court.

On May 26, 1958, the trial court made and filed its findings and conclusions.

On June 25, 1958, the trial court overruled the plaintiff's motion for a new trial.

On July 18, 1958, the journal entry of judgment was filed.

On July 14, 1958, appeal was taken to the Supreme Court from the order overruling the motion for a new trial, the findings and conclusions, and the judgment of the district court.

On May 9, 1959, the claim of W. E. Hill against the estate of W. W. Hill in probate court based on the promissory note dated February 20, 1952, was ultimately disallowed on appeal in the district court, claimant offering no evidence in support thereof. It should here be noted the appellant at no time presented any evidence in support of the claim or caused it to be allowed.

Does the note in question establish an equitable lien on the real property described on the reverse side of the note?

There can be no doubt upon the authorities that where one party advances money to another upon the faith of an agreement by the latter to secure its payment by a mortgage upon certain lands, but which is never executed, or which, if executed, is so defective or informal as to fail in effectuating the purpose of its execution, equity will impress upon the land intended to be mortgaged a lien in favor of the creditor who advanced the money for the security and satisfaction of his debt. The lien attaches upon the payment of the money and unless there is a waiver of it, express or implied, remains and may be enforced so long as the debt itself may be enforced.

The whole doctrine of equitable mortgages is founded upon the cardinal maxim of equity which regards that as done which has been agreed to be done, and ought to have been done. In order to apply this maxim according to its true meaning the court will treat the subject matter, as to collateral consequences and incidents, in

the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been.

The doctrine of equitable mortgages is not limited to written instruments intended as mortgages, but which by reason of formal defects cannot have such operation without the aid of the court, but also to a very great variety of transactions to which equity attaches that character. It is not necessary that such transactions or agreements as to lands should be in writing in order to take them out of the operation of the statute of frauds because they are completely executed by at least one of the parties and are no longer executory, and because the statute by its own terms does not affect the power which courts of equity have always exercised to compel specific performance of such agreements.

In such case the equitable lien decreed results from the operation of the law upon the entire conduct of the parties, and hence, is in terms excluded from the inhibition of the statute. (*Foster v. Bank,* 71 Kan. 158, 80 Pac. 49, and cases cited therein.)

Many decisions in this jurisdiction have firmly announced the foregoing principle. In *Clapp v. Maurer,* 94 Kan. 549, 146 Pac. 1155, the court quoted from 16 Cyc. 85, 88, as follows:

" 'Where the transaction is in its nature and circumstances such as to give one party an inequitable or unconscionable advantage over the other, equity, inferring fraud, will not only decline to lend its aid to the party seeking to enforce such claim, but will often actively interfere to give relief to the other party. . . . While it is said that equity has general jurisdiction, concurrent with law, for the enforcement of liens, equity nevertheless recognizes and enforces certain liens not recognized at law. Of these the most frequent species are the lien of a vendor for unpaid purchase-money, and the so-called equitable mortgages. Besides enforcing liens created by express contract, equity, while disclaiming the power to create a lien in the absence of contract, has nevertheless protected equitable rights by impressing liens in the absence of express contract and contrary to the rules of law.' . . ." (p. 552.)

The form of an agreement by which security is given is unimportant. If the purpose plainly appears equity regards the substance and gives effect to the intention. Courts of equity are not governed by the same rules as courts of law in determining whether a mortgage has been created. Equity looks at the final incident and purpose rather than at the form. If the intent appears to give or charge real property as a security for an obligation the lien follows. (*Charpie v. Stout,* 88 Kan. 318, 128 Pac. 396.)

It is said of an equitable lien that it is not a right of property in the subject matter of the lien nor a right of action therefor, nor does

it depend upon possession; *but is merely a right to have the property subjected to the payment of a debt or claim,* and it applies as well to charges arising by express engagement of the owner of property as to a duty or intention implied on his part to make the property answerable for a specific debt or engagement. (*Bisby v. Quinby,* 92 Kan. 86, 140 Pac. 635.)

For additional authorities on equitable liens see, *Fitzgerald v. Fitzgerald,* 97 Kan. 408, 155 Pac. 791; *Bank v. Pickering,* 111 Kan. 132, 205 Pac. 1110; *Farmers State Bank v. St. Aubyn,* 120 Kan. 66, 242 Pac. 466; *Assembly of God v. Sangster,* 178 Kan. 678, 290 P. 2d 1057; and *Rex v. Warner,* 183 Kan. 763, 332 P. 2d 572.

In turning now to the promissory note in the instant case we need not be concerned with the statute of frauds or any oral promises the decedent, W. W. Hill, may or may not have made. The promissory note itself and the expressed intention of the maker of the note, referred to as an agreement on the reverse side of the note, all being part of the same instrument, are fully written and appear over the handwritten signature of W. W. Hill.

The intention expressed was that the holder acquired a right to have the described property subjected to the payment of the debt. If, under the note, the appellant is relegated to his claim against the assets of the estate of W. W. Hill, such reduction of the assets of the estate would reduce the sum which the appellant would receive from the assets of the estate as an heir. This would be in total disregard of the provisions "the Holder of this note shall have $2500.00 interest in above described Property—besides his Legal interest as heir to Estate of W. W. Hill." It could hardly be argued the parties intended at the time the money in question was loaned and the note given with the security contemplated by the parties, that the assets of the estate of the father, other than the security contemplated, would stand liable for the payment of this note to the detriment of the appellant's rights. We therefore think it is clear, upon the authority of the previous decisions of this court, the written instrument in question, read in its entirety, gave rise to an equitable lien. The instrument is a mortgage, for it evidences a debt and contains a promise to pay it out of the property. It is not the usual mortgage but it is sufficient to vest in the creditor an equitable lien.

While the property purchased with the proceeds of the loan became the homestead of W. W. Hill and Myrtle Bessie Hill im-

mediately upon conveyance, there can be no doubt, to the extent of the money advanced for the purchase price of the land, the equitable mortgage of W. E. Hill was a purchase-money mortgage and, therefore, valid without the consent of Myrtle Bessie Hill, notwithstanding the property was occupied as a homestead. (*Foster v. Bank*, supra.) Money borrowed from a third person by the purchaser of a homestead, and paid to the vendor, is purchase-money for which the purchased property is liable to such third person where the transaction between the parties to the lending transaction contemplates security for the obligation. The purchase-money mortgage arising from such transaction takes priority over the homestead exemption in Article 15, Section 9 of the Constitution of Kansas (*Bank v. Pickering*, supra, and cases cited therein) and it matters not that such purchase-money mortgage may be an equitable mortgage.

The subsequent title acquired by Myrtle Bessie Hill upon the death of W. W. Hill under the joint tenancy deed by right of survivorship did not place her in the position of a *bona fide* purchaser. She became the sole owner of the fee title by operation of law (See, *Ulrich v. Ulrich*, 1 N. Y. Supp. 777) and the property in her hands remained *subject* to the equitable purchase-money mortgage.

The appellee contends the mortgage was not a right which survived the death of W. W. Hill under the joint tenancy deed. This position is untenable. If such position were recognized upon the facts and circumstances here presented, the use of a *joint tenancy deed* would be permitted to sanction monstrous consequences. We therefore hold the *property* in the hands of Myrtle Bessie Hill was impressed with an equitable purchase-money mortgage in favor of W. E. Hill to the extent of the unpaid obligation on the note. (See, *Charpie v. Stout*, supra.)

It is argued the appellant, W. E. Hill, did not plead or prove default in the payment of the note or that a demand was made under the demand provision of the note. We need not ponder the sufficiency of the petition since the appellee abandoned her demurrer and the answer did not attack these defects. The petition did allege default and the evidence disclosed the filing of a claim by the appellant in the estate of W. W. Hill, deceased, within the statutory period pursuant to G. S. 1949, 59-2237.

After the death of W. W. Hill demand would have been futile. The only person against whom a demand could have been made

was his personal representative (G. S. 1949, 52-707), but the personal representative is powerless to make payment without an order of the probate court appointing him. To constitute a valid demand it is not necessary that the holder of a note pursue the demand to an ultimate conclusion in a court of law. Furthermore, the appellant did file a claim in the probate court, and, if under the circumstances a demand were necessary, this was sufficient to mature the note and authorize foreclosure.

The appellee argues the appellant had an adequate remedy at law by proceeding to file his claim for the amount due on the note in the probate court in the estate of W. W. Hill, deceased. This is interwoven with the affirmative defense alleged concerning the appellant's election of his remedy and estoppel. Embraced within the foregoing is the question whether, under the facts and circumstances here presented, a secured creditor upon the death of the mortgagor, before maturity or payment of the mortgage debt, may proceed to foreclose his mortgage in the district court and also file his claim against the estate of the deceased mortgagor in the probate court. These questions will be considered together.

The existence of a remedy at law does not deprive equity of jurisdiction unless such remedy is clear, adequate and complete. Such remedy at law must be equally complete, efficient, practical and prompt with the remedy in equity. And such remedy must exist against the same person from whom the relief in equity is sought. (*Preston v. Oil Co,* 108 Kan. 810, 196 Pac. 1098; and 30 C. J. S., Equity, § 25, p. 347.) Regarding a failure to plead that plaintiff was without an adequate remedy at law see, *Preston v. Oil Co.,* supra.

It is unnecessary to debate whether the appellant was entitled to proceed in a court of equity to foreclose his mortgage in the instant case. In this jurisdiction it is settled that all actions to foreclose mortgages are equitable in nature. (*Thompson v. Matthews,* 163 Kan. 434, 183 P. 2d 216; *Federal Land Bank v. Butz,* 156 Kan. 662, 135 P. 2d 883; and *Union State Bank v. Chapman,* 124 Kan. 315, 259 Pac. 681.)

Looking first to the practical approach concerning the circumstances in which the appellant found himself upon the death of W. W. Hill, it may be observed he was in danger of losing his security. There being no mortgage of record, Myrtle Bessie Hill, having become the sole owner of the fee title by right of survivor-

ship, was in a position to convey the property free and clear to a *bona fide* purchaser.

While it is true the appellant exhibited his demand against the estate of W. W. Hill, deceased, by filing his petition for its allowance in the proper probate court, he deferred asking for the allowance of the amount due on his claim in the probate court and therefore did not foreclose his right to proceed against the security (*In re Estate of Harris*, 159 Kan. 431, 155 P. 2d 425) by subsequently filing his action to foreclose in the district court. In fact, the appellant at no time prosecuted his claim in the probate court to an allowance of the claim. After appeal was taken to this court, the claim filed in the probate court against the estate of W. W. Hill, having been appealed to the district court for the second time, was disallowed on the ground the appellant refused to offer any evidence. This would indicate the appellant was looking solely to the security for the satisfaction of the indebtedness.

In 1 Wiltsie on Mortgage Foreclosure, § 157, it is said:

"The death of the mortgagor before maturity or payment of a mortgage debt does not in any way affect the rights of the mortgagee to foreclose the mortgage on default of any of its covenants, without its previous presentation as a claim against the estate, or an allowance by the administrator or a court. After the death of a mortgagor the mortgagee may institute an action to foreclose the mortgage against the heirs of the mortgagor, and cannot be compelled to relinquish his lien on the real estate and to share in the general assets of the estate. The mortgagee is not bound to proceed against the estate of the deceased mortgagor before bringing his action or proceeding to foreclose the mortgage.

"The death of the mortgagor in no wise affects the lien of the mortgagee or his rights thereunder, even as against the heirs of the mortgagor, who have a right to have the mortgage debt paid out of the personal property of the decedent. But where the mortgage is foreclosed without presentation and allowance against the estate of the deceased mortgagor, the collection of the debt will be limited to the proceeds arising from the sale of the mortgaged property, where no claim is presented as required by the statute." (pp. 275, 276.)

In the instant action Myrtle Bessie Hill as successor to the property jointly held with W. W. Hill, deceased, would be in the same position as the heirs of a mortgagor referred to in the first paragraph above quoted.

Among the authorities cited by Wiltsie for the above proposition of law is a Kansas case, *Andrews v. Morse*, 51 Kan. 30, 32 Pac. 640, where it was said:

". . . The death of the mortgagor did not impair or affect the lien of the mortgage. It did not place the mortgagee who had a lien in the same

position as an unsecured creditor, and remit him to the general assets of the estate to satisfy his lien. If he looks to the personal assets in the hands of the administrator for payment of his debt or any part of it, he must then present his demand under the statute. If he fails to present it within the three-year period, he can obtain nothing from the general assets, and is limited to the proceeds arising from the sale of the mortgaged property. An equitable claim like the plaintiff's is enforceable in the district court, and is not such a demand as the statute referred to contemplates. *Neither the presentation of the claim in the probate court nor the failure to present it precludes the foreclosure of the mortgage lien until the mortgage debt has been paid or extinguished* . . .

". . . It has been said that 'it would appear to be the better opinion that a creditor may rely upon a mortgage or other specific lien, although the claim secured by it has not been presented; but in such case he has no claim upon the general assets in the hands of the administrator.' . . .

"The failure of the plaintiff to present his claim secured by mortgage until after the lapse of three years will prevent him from obtaining a judgment for any deficiency that may remain after exhausting the mortgaged property, but it does not affect his rights to foreclose his mortgage, and to subject the land so mortgaged to the payment of the debt." (pp. 32, 33.) (Emphasis added.)

The foregoing case was decided under G. S. 1889, Section 2865, barring all demands against the estate of a decedent not exhibited within three years. Under the present probate code the time within which a demand may be filed is nine months after publication notice to the creditors by the executor or administrator (See, G. S. 1949, 59-2236) but the principle is the same unless subsequent enactments of the legislature have altered the situation.

The code of civil procedure, G. S. 1949, 60-3107, provides in part:

"In actions to enforce a mortgage, deed of trust, or other lien or charge, a personal judgment or judgments shall be rendered for the amount or amounts due, . . ."

The above provision has been a part of the code in this jurisdiction since G. S. 1868, Chapter 80, Section 399. A study of the cases indicates the foregoing provision of the statute has been construed to require the rendition of a personal judgment in actions to foreclose a mortgage or a lien only where the court has jurisdiction of the necessary party or parties to do so. Thus, Justice Brewer, in the case of *Walkenhorst v. Lewis*, 24 Kan. 420, said:

". . . But suppose no personal judgment was permissible under the pleadings: would the decree of foreclosure and sale be thereby rendered a nullity? Is it the intention of § 399 of the code to prevent foreclosure without a personal judgment against some party? If the mortgagor be deceased, cannot the mortgage be foreclosed without the appointment of an administrator?" (p. 426.)

Further, in *Challiss v. Headley & Carr*, 9 Kan. 684, it was held that a decree in a suit to foreclose a mortgage which contains a personal judgment for money, even if unauthorized, shall not avoid the order of foreclosure and sale.

In *Crooker v. Pearson*, 41 Kan. 410, 21 Pac. 270, a nonresident debtor was beyond the jurisdiction of this state in Iowa when he executed the note payable in Iowa and gave a mortgage upon land in Kansas. It was held the law of Iowa, where a mortgage debt is not barred until ten years after it becomes due, controlled and therefore removed the bar so as to permit an action to subject the mortgaged property to the payment of the debt. The court recognized no personal judgment could be rendered thereon, but only a judgment that the mortgage be foreclosed and the money applied to the payment of the mortgage debt.

It was argued in *State Bank of Downs v. Criswell*, 155 Kan. 314, 124 P. 2d 500, that a mortgage could not be foreclosed without a personal judgment having been rendered against the personal representative of the decedent. The judgment entered by the court was expressly made a first, prior and paramount lien on the land to the extent of the indebtedness represented by the note and secured by the mortgage. The court held it was not necessary that a personal judgment should also have been rendered on the note against the personal representative of the decedent in order to force the security. The court said a mortgage may be given to secure the debt of another.

In *Graham v. Graham*, 38 Kan. 440, 17 Pac. 152, the court recognized that a plaintiff had the "undoubted right to seek relief in either the probate or the district court—perhaps in both at the same time, if he had simply asked for the allowance of his note in the probate court, and only for a judgment in the district court establishing the mortgage lien as a judgment lien, and an order to sell the real estate in question." (p. 442.)

We deem it unnecessary to decide whether G. S. 1949, 59-1303, is applicable to the facts and circumstances presented by the instant case. If applicable, it should be noted the appellant here sought to do the very thing contemplated by this section of the statute cited. He chose the course of action which would exhaust the security for his debt prior to *obtaining* an allowance in the probate court against the estate of W. W. Hill, deceased.

It is clear no judgment for deficiency in a suit to foreclose a mortgage can be rendered against the heirs or widow of the de-

ceased, for they are not personally liable for the mortgage debt.

We therefore hold the mere exhibition of the appellant's demand against the estate of the deceased mortgagor by filing his petition for its allowance in the probate court does not release the mortgage or prevent a foreclosure of the mortgage by an action in the district court. Upon the death of the mortgagor, the holder of the mortgage may foreclose it without proving the debt against the mortgagor's estate. (See, 3 Jones on Mortgages, § 1574, p. 10.)

Other questions are apparent from the factual statement and some are raised by counsel for the respective parties in their briefs, but the trial court having erred in its conclusion regarding the basic premise upon which this action is founded—the existence of an equitable mortgage—left certain matters undetermined, a discussion of which would serve only to prejudice the rights of one party or the other. Finding it necessary to refer the case back for a new trial, further consideration of the case is deferred until such time as the trial court shall have first passed upon further questions made necessary by our decision.

The judgment of the trial court is reversed and the cause remanded with directions to grant a new trial.