No. 27,460.

OSCAR P. MOYER, *Appellant,* .v. W. E. HEZLEP et al., *Appellees;*
CHARLES FRESHWATER, *Appellant.*

SYLLABUS BY THE COURT.

1. CHATTEL MORTGAGE—*Priority Over Labor Liens—Proof of Indebtedness.* The
   proceedings considered in an action in which the lien of a chattel mortgage
   securing overdue promissory notes was given priority over labor liens, and
   *held,* the judgment will not be reversed for lack of formal proof that the in-
   debtedness represented by the notes had not been satisfied.

2. MINES AND MINERALS—*Oil and Gas Leases—Priority of Labor Liens.* The
   statute relating to liens on oil and gas leaseholds, for labor performed and
   supplies furnished in drilling or completing a well, gives preference to the
   lien provided for over those liens only which attach subsequent to the com-
   mencement of the labor or the furnishing of the supplies. (R. S. 55-207, as
   amended by Laws 1925, ch. 197.)

3. SAME—*Oil and Gas Leases—Liens for Labor—Contract as to Time Not Ex-
   pended on Well.* Atlhough a laborer's subcontract with a contractor who
   has engaged to drill an oil and gas well provides for pay for straight time,
   the laborer may not have a lien on the leasehold for time not expended on
   the well, unless the owner is at fault.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge. Opin-
ion filed June 11, 1927.· Affirmed.

*A. M. Harvey* and *Randal C. Harvey,* both of Topeka, for the appellant.

*E. C. Brookens, E. S. Francis* and *H. L. Hart,* all of Westmoreland, for the
appellees.

The opinion of the court was delivered by

BURCH, J.:   The action was one to foreclose a labor lien on an oil
leasehold. Another lien claimant and a mortgagee were made parties
defendant. Labor liens were denied, and the claimants appeal.

Crawford was owner of the lease. Hezlep contracted with Craw-
ford to drill the well. Hezlep employed Moyer, a tool dresser, and
Freshwater, a driller. The First National Bank of St. Marys held
a chattel mortgage given by Crawford on the drilling equipment,
to secure three promissory notes, two to the bank and one to Burns.

Moyer and Freshwater claimed they should have liens prior to
the lien of the bank, because the bank.failed to prove any present

Mines and Minerals, 40 C. J. pp. 1164 n. 21, 1179 n. 27.   Chattel Mortgages,
5 R. C. L. 448.

indebtedness secured by mortgage. At the trial the attorney for the bank commenced to prove the mortgage indebtedness. The court inquired if there was any question about the notes or mortgage. The attorney for the lien claimants said he had not stipulated about it, and he presumed the mortgagee should prove indebtedness. He did not say he disputed existence of indebtedness as represented by the notes. The witness on the stand, who was cashier of the bank, then inquired if the original note which was the foundation of the indebtedness was wanted, and the attorney for the lien claimants said he did not care about the cashier going into the details about that. Previous proceedings had shown existence of the notes and chattel mortgage was a matter of common knowledge, the lien claimants had been fully informed concerning them, and notice of foreclosure of the mortgage had been served on them. So the court said it was not necessary to take up time, evidently meaning it was not necessary to take up time to prove what was not contested. The notes and previous renewals, and the mortgage and a renewal of the mortgage, were then informally established, and the attorney for the lien claimants examined the bank cashier with respect to what notes were past due. No issue was raised by the pleadings that the mortgage indebtedness had been satisfied, no showing to that effect was made at the hearing on the motion for new trial, there is no suggestion of such satisfaction in the brief of the lien claimants, and this court is not inclined to reverse the judgment and send the case back in order that something may be formally established which nobody has in good faith disputed, and concerning which there is no actual doubt.

The well was begun in 1920. The mortgage was given in November, 1922. Hezlep's contract was dated October 29, 1925. The lien claimants say their liens date from commencement of the well. Hezlep contracted to sink what Moyer called an "old hole," to a depth of 3,000 feet unless oil or gas were sooner discovered. This hole was partially filled up with shavings, and had 140 feet of casing and two strings of tools in it. Hezlep's venture was not related to anything previously done on the well or lease, and for the purpose of liens accruing by virtue of his contract the well was commenced when he commenced work.

The statute giving a lien for labor and supplies furnished for drilling, completing, or repairing an oil or gas well does not treat the well as the mechanics' lien statute treats a building. The me-

Moyer v. Hezlep.

chanics' lien statute gives the lien provided for preference over other liens attaching subsequent to commencement of the building. (R. S. 60-1401.) The statute relating to liens on oil and gas wells does not mention commencement of well, and gives the lien provided for preference over those liens only attaching "subsequent to the commencement of or the furnishing of or putting up of any such machinery or supplies." (R. S. 55-207, as amended by Laws 1925, ch. 197.) Construing the section as a whole, the phrase "such machinery and supplies" means machinery and supplies furnished under contract with the owner of the leasehold, and the phrase should be expanded to read "labor, material, machinery, and oil-well supplies."

The lien claimants say they should have priority over the mortgage because the mortgagee waived priority. This was a question of fact decided adversely to the lien claimants; on abundant evidence there was no waiver.

The court refused to award the lien claimants even secondary liens, and left them to their remedy against Hezlep, who employed them. Hezlep's contract with Crawford provided Hezlep should be paid $4,000 on completion of the well. He did not complete the well, and had nothing due him. The lien claimants assert the court denied their liens on the ground they were bound by Hezlep's contract with Crawford. There is nothing in the record to indicate this is true. Findings of fact and conclusions of law separately stated were not requested, and the court found generally against the lien claimants. A basis for the judgment may be found in the facts now to be stated.

The items specified in Moyer's statement of lien were the following:

"February 1, 1926, to March 10, 1926, 38 days at $8 per day........ $304.00
"March 11, 1926, to May 3, 1926, 53 days at $10 per day........... 530.00
                                                                   _____
                                                                   $834.00"

The items specified in Freshwater's statement of lien were the following:

"November 10, 1925, to May 3, 1926, 174 days labor as driller at $12 per day ................................................ $2,088.00"

Each claimant testified he was to be paid for straight time, that is, for each day, whether he worked or not, and testified that he worked continuously. There was evidence Freshwater was not simply a driller, but was Hezlep's agent, in charge of the work when

Hezlep was away. Hezlep lacked money and credit to drill the well. In January, 1926, an employee quit work, and attached the drilling outfit. Moyer, with full understanding of the financial situation, took a chance on Hezlep being able to complete the well and pay him. Moyer testified he kept no account of his time. Freshwater testified there were days when they did not go out to the well at all. The cashier of the bank testified Freshwater would loaf in the bank at times when there would be a day they could not drill. Work was begun with an old boiler, which had to be repaired. This boiler was finally discarded, and another old boiler was substituted, the crown sheet of which finally fell down. Crawford testified there were days and days when they did not work. When the attachment was levied, no work was done until the matter was straightened out. A great deal of the time they were not working, and they did not work continuously on the well at all. Presumably the court believed this testimony, and because the lien claimants did not prove their time, the court could not state a sum for which either one should have a lien.

Time not expended in labor on the well is no more lienable than supplies not furnished, unless Crawford were at fault. (See *Skinner v. Oil Co.,* 112 Kan. 742, 212 Pac. 684.) In Crawford's contract with Hezlep, Crawford agreed to furnish equipment on the ground at the time the contract was entered into, and he did so. The contract contained the following provision relating to waiting time:

"The first party shall be paid at the same rate for time lost while waiting on casing, fuel, or water, except that he shall not be paid for the first twelve hours of such delay."

Freshwater testified there were days they did not go out to the well because they were out of water. In February, 1926, Crawford employed Freshwater to furnish water, and Crawford testified he performed his part of the contract. The general finding against the lien claimants acquitted Crawford of fault.

Because findings of fact and conclusions of law separately stated were not made, this court has no key to the court's view of what the evidence proved, and has no key to its view of the law. From the face of the record this court is unable to declare the district court committed error which requires reversal of the judgment.

The judgment of the district court is affirmed.

HARVEY, J., not sitting.