No. 48,617

GLEN BECK, a/k/a GLEN L. BECK, d/b/a G. I. IMPLEMENT CO., *Appellant,* v. KEITH BROOKS and GERTRUDE E. BROOKS, *Appellees.*

(580 P.2d 882)

Opinion filed July 15, 1978.

*Lowell F. Hahn,* of Hahn & Hahn, of Phillipsburg, and *M. Marcus Holcomb,* of Holcomb, Holcomb & Harkins, of Buffalo, Oklahoma, argued the cause and were on the brief for the appellant.

*Robert A. Bloomer,* of Bloomer, Bloomer & Bloomer, of Osborne, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal by plaintiff Glen Beck from a summary judgment wherein the trial court invalidated a mortgage plaintiff held on land owned by defendant Keith Brooks.

On June 17, 1971, Keith purchased two combines and other equipment from plaintiff Beck, an Allis-Chalmers dealer in Buffalo, Oklahoma. The transaction was evidenced by a retail sales installment contract and security agreement. In addition to the security agreement attached to the contract, Keith executed a real estate mortgage for certain real estate in Smith County, Kansas, which he described on the mortgage as "80 acres SE ½ 19-5-11." On a separate financing statement he described the property also as "80 acres SE ½ 19-5-11." This financing statement was filed with the Osborne County register of deeds on July 14, 1971.

The description of the real estate was provided by Keith's mother, defendant Gertrude E. Brooks, when Keith telephoned her for the description of his land.

In actuality, Keith did not hold fee title to 80 acres located in the south half section of land in Section 19-5-11 of Smith County

at the time he executed the mortgage to plaintiff Beck on June 17, 1971; however, he did hold an undivided one-fourth interest in the entire 320 acres comprising that half section, which he acquired at his father's death in 1963. Gertrude held an undivided one-half interest in the 320 acres and Keith's brother, Randall, held the remaining undivided one-fourth interest. In 1972, pursuant to a family settlement, Keith acquired full title to 80 acres in the half section, described as "80 acres E ½ SE ¼ 19-5-11."

In February and March of 1972, Gertrude wrote Allis-Chalmers Credit Corporation two letters concerning the real estate covered by the mortgage. In her first letter she wrote:

"Keith said supposed to let u know about the land. 80 A Keith, 80 A Randall, 160 A Mother. After her death 160 apiece to sons."

The second letter stated:

"In regard to your letter about the land. I sent you your information some time ago. U should rec'd it. But Keith has 80 A Northeast 80."
"Keith has 80
"Randall has 80
"Mother 160"

On July 2, 1973, Keith executed a note and mortgage on the eighty acres in favor of his mother and recorded them with the Smith County register of deeds. On July 12, Allis-Chalmers attempted to record its mortgage. On July 13, the register of deeds returned the mortgage to Allis-Chalmers, noting the real estate description was incorrect; but the register of deeds supplied the correct description and indicated she would record the mortgage if the correct description were placed on it. Allis-Chalmers corrected the mortgage and returned it to the register of deeds on July 18, when it was recorded.

When Keith became delinquent on his payments for the equipment, the defendants were informed the combines would be repossessed if payments were not made. They were informed that if the machines were repossessed they would be sold and if any deficiency existed the mortgage on the land would be foreclosed.

This action was filed after Keith failed to pay the deficiency. Gertrude was made a party because of the mortgage executed on July 2, 1973.

During discovery plaintiff deposed Keith. In his testimony, Keith admitted the purchase of the combines from plaintiff; that

he knew and intended to mortgage his land in order to get the combines; that he called his mother in Kansas to get the legal description of his property and gave the description to plaintiff; that he had been given a good deal on his old combines; that the price on the new combines was fair; and that at no time had there been misrepresentation, fraud or overreaching by the plaintiff.

On defendants' motion for summary judgment the trial court ruled that the alteration made on the mortgage, inserting the correct legal description of Keith Brooks' land, voided the mortgage and that the doctrine of after-acquired property did not apply to a mortgage absent a ratification of the mortgage by the mortgagor. Judgment was entered for defendants. For the reasons set forth below the judgment of the trial court is reversed.

The facts of this case demand application of the doctrine of equitable mortgages. It was undisputed, and Keith admitted, that he knew and intended to execute a mortgage only on the land he owned in order to purchase the combines. He called his mother to get a legal description of the land and she apparently gave him an incorrect description. It is of further significance that Gertrude wrote two letters to Allis-Chalmers Credit Corporation in an effort to describe the land owned by Keith.

The theory of equitable mortgages has been utilized to prevent injustice and inequity. (*E.g., Fuqua v. Hanson,* 222 Kan. 653, 567 P.2d 862 [1977]; *Benton v. Benton,* 215 Kan. 875, 528 P.2d 1244 [1974]; *Ingram v. Ingram,* 214 Kan. 415, 521 P.2d 254 [1974]; *Rex v. Warner,* 183 Kan. 763, 332 P.2d 572 [1958]; *Farmers State Bank v. St. Aubyn,* 120 Kan. 66, 242 Pac. 466 [1926]; *Fitzgerald v. Fitzgerald,* 97 Kan. 408, 155 Pac. 791 [1916]; *Charpie v. Stout,* 88 Kan. 318, 128 Pac. 396 [1912].) If it appears the purpose of the transaction was to charge real property as security for an obligation, the lien is created regardless of the form of the agreement. (*Hill v. Hill,* 185 Kan. 389, 345 P.2d 1015 [1959]; *Charpie v. Stout,* supra.)

Where one party advances money to another upon the faith of an agreement by the latter to secure its payment by a mortgage upon specified lands, but which mortgage is never executed, or which, if executed, is so defective or informal as to fail in effectuating the purpose of the execution, equity will impress upon the land intended to be mortgaged a lien in favor of the creditor who advanced the money for the security and satisfaction

of his debt. (*Hill v. Hill,* supra; *Foster v. Bank,* 71 Kan. 158, 80 Pac. 49 [1905].)

It is of no consequence that defendant Keith Brooks obtained legal title to the property after the defective mortgage was executed. The fact remains, and is undisputed, that both defendants acted as though Keith held full title to the eighty acres of land at the time the mortgage was executed. K.S.A. 58-2207 applies the doctrine of after-acquired title to the grantor-grantee situation when the grantor does not obtain title until after he has conveyed the property. The statute embodies the principle of equity which estops a grantor from profiting from his own wrong by denying he had title to real estate when he earlier represented that he had title. The same principle applies to a mortgagor who represents to a mortgagee that he has title to real property described in the mortgage. (55 Am. Jur. 2d, Mortgages, §§ 242 and 243, pp. 344-46; 59 C.J.S., Mortgages, § 185, pp. 237-41.)

The trial court held that the original mortgage was invalidated when it was materially altered by the insertion of the proper legal description of the property. The correction of obvious mistakes, omissions, or inconsistencies is not a material alteration of an instrument when it does not change the terms, rights or obligations of either party from that originally intended. (4 Am. Jur. 2d, Alteration of Instruments, § 5, pp. 6-8, and § 38, p. 38. See also, *Boys v. Long,* 268 P.2d 890 [Okla. 1954].)

The decision of the trial court is reversed. On remand the trial court is instructed to enter judgment in favor of plaintiff and impress upon the property which is the subject of this lawsuit an equitable mortgage in favor of plaintiff.

The question of the priority of the Brooks mortgage over the Allis-Chalmers mortgage remains for trial. The trial court is instructed to determine this issue in accordance with the rule of law set forth in *Foster v. Bank,* supra at 162-63.

Reversed and remanded.