(747 P.2d 183)

No. 59,807

Consolidated Oil Wells Services, Inc., *Appellant*, v. State Oil Company, *et al.*, Appellees.

—

Opinion filed December 17, 1987.

*Shelby P. Horn,* of Coombs, Pringle & Horn, of Chanute, for the appellant.

*Clement H. Hall,* of Hall Levy Lively DeVore & Belot, of Coffeyville, for the appellee, H. W. Freidline.

Before BRISCOE, P.J., HARRY G. MILLER, District Judge Retired, assigned, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

BRISCOE, J.: Consolidated Oil Well Services, Inc., (Consolidated) brought this action to foreclose on its lien for labor and materials and to obtain a determination of lien priority. Consolidated appeals the district court's decision granting to the defendants landowners, H.W. and Ruby Freidline, a first and prior lien on the leasehold equipment and fixtures.

On January 7, 1980, the Freidlines as lessors entered into an oil and gas lease with James D. McGeehee, James L. McGeehee, and A. Wesley Karns as lessees. We will reference only those portions of the lease which are relevant to our decision. Under the terms of the lease, the lessors' royalty share was 3/16ths of all oil produced. The lease also provided that, if the value of the royalty oil sold from the leased premises fell below $8,000 per year, the lessees were to pay lessors the difference between the value of royalty oil received by lessors and $8,000. Monthly payments of $500 were to be made toward the annual guarantee of $8,000. If the lessor had not received $8,000 at the end of the year when the monthly payments plus the royalty payments were totaled, the difference became due. Lessees were also to pay for any damage caused to growing crops. Also included in the lease and central to the present litigation is the following lien provision:

"(f) LESSORS shall have and are hereby granted a lien of all equipments and fixtures placed upon the leased premises by LESSEES, in the operation of this lease, to satisfy any loss or damage suffered by LESSORS because of the failure of the LESSEES to carry out the terms and conditions of this lease on their part to be perfected."

The lease was recorded in the office of the Register of Deeds of Montgomery County on February 27, 1980. The leasehold was subsequently assigned to Alfa Resources, Inc., which contracted with State Oil Co., Inc., to operate the lease.

Consolidated performed labor and provided materials to the oil wells on the leasehold at the request of State Oil. When Consolidated was not paid for its labor and materials, it filed a lien pursuant to K.S.A. 55-207 on December 16, 1983, and

January 9, 1984. Notice was given as required by the statute. On February 3, 1984, Consolidated filed the present foreclosure action on its lien against State Oil, Petro Wireline Services, Inc., and the Freidlines. The action was consolidated with a foreclosure action filed by Kansas Oil Patch Service and Repair, Inc. Both Petro and Kansas Oil were also asserting liens arising from unpaid labor and materials. The Freidlines answered in both actions, asserting priority of the lien which they contend was created by their lease. The Freidlines have never contended that Consolidated's lien was invalid, but only that it was subsequent to the Freidlines' lien.

In a journal entry filed on December 12, 1984, the district court determined that Consolidated had a valid lien and ordered that, if Consolidated was not paid, the lien should be foreclosed. In a subsequent journal entry filed July 3, 1986, the district court held the lease terminated by its own terms and that the Freidlines should be given first priority on the lien created by the lease for the total amount of $13,089. The district court held the Freidlines' lien was created by express contract and attached when the lease was recorded on February 27, 1980. The damages awarded the Freidlines included unpaid guaranteed royalties for 1983, 1984, and 1985 in the amounts of $1,007.54, $5,140.40, and $6,391.96, respectively, plus crop damage in the amount of $550. Only Consolidated has appealed the district court's decision.

Two issues are presented on appeal: (1) Was a valid lien created by the provision in the Freidlines' oil and gas lease; and (2) does the lien have priority over a valid statutory lien for labor and materials?

As to the first issue, Consolidated argues that K.S.A. 55-207 requires a lessor to file its lien under the provisions of that statute. K.S.A. 55-207 provides in pertinent part:

"Any person, corporation or copartnership who shall under contract, express or implied, with the owner of any leasehold for oil and gas purposes, or the owner of any gas pipe line or oil pipe line, or with the trustee or agent of such owner, who shall perform labor or furnish material, machinery and oil-well supplies used in the digging, drilling, torpedoing, completing, operating or repairing of any oil or gas well, or who shall furnish any oil-well supplies or perform any labor in constructing or putting together any of the machinery used in drilling, torpedoing, operating, completing or repairing of any gas well, shall have a lien upon the whole of such leasehold, or oil pipe line or gas pipe line, or lease for oil

and gas purposes, the building and appurtenances, and upon the material and supplies so furnished, and upon said oil and gas well for which they were furnished, and upon all the other oil wells, fixtures and appliances used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished and labor performed . . . .

"Such lien shall be preferred to all other liens, or encumbrances which may attach to or upon such leasehold for gas and oil purposes and upon any oil pipe line, or gas pipe line, or such oil and gas wells and the material and machinery so furnished and the leasehold for oil and gas purposes and the fixtures and appliances thereon subsequent to the commencement of or the furnishing or putting up of any such machinery or supplies."

The Freidlines argue that, by its very language, 55-207 does not apply to them and that their lien created by express contract is a valid first lien on the leasehold equipment.

We agree that K.S.A. 55-207 does not apply to the type of claim the Freidlines seek to secure. The statute provides for the creation of liens in favor of persons providing labor and material for oil and gas wells or pipelines. The lien asserted by the Freidlines does not fall into that category. When their lease was recorded, the Freidlines sought to create a lien for any loss of royalty payments and damage to crops caused by any future breach of the lease by the lessees.

If K.S.A. 55-207 is inapplicable to the Freidlines, what effect should be given to the lease provision containing the lien language? The Freidlines contend not only that a lien was created by the lease provision, but also that it has priority over Consolidated's lien. We conclude that, at best, the lease provision gave the Freidlines an equitable lien enforceable against its lessees.

Kansas does recognize equitable mortgages and liens. Where one party advances money to another upon the faith of an agreement by the latter to secure its payment by a mortgage upon specified lands, but which mortgage is never executed, or which, if executed, is so defective or informal as to fail in effectuating the purpose of the execution, equity will impress upon the land intended to be mortgaged a lien in favor of the creditor who advanced the money for the security and satisfaction of his debt. *Garnett State Savings Bank v. Tush*, 232 Kan. 447, 453, 657 P.2d 508 (1983); *Beck v. Brooks*, 224 Kan. 300, 302-03, 580 P.2d 882 (1978); *Hill v. Hill*, 185 Kan. 389, 396, 345 P.2d 1015 (1959). An equitable lien is not a right of property in the subject matter of

the lien nor a right of action therefor, nor does it depend upon possession; but is merely a right to have the property subjected to the payment of a debt or claim, and it applies as well to charges arising by express engagement of the owner of property as to a duty of intention implied on his part to make the property answerable for a specific debt or engagement. *Ford v. Guarantee Abstract & Title Co.*, 220 Kan. 244, 272-73, 553 P.2d 254 (1976); *Hill v. Hill*, 185 Kan. at 397-98. Although an equitable lien is usually based upon an implied contract, an equitable lien may also be created by an express contract. 51 Am. Jur. 2d, Liens § 26, p. 165. The Freidlines point to no authority, however, to support the district court's conclusion that their equitable lien has priority over Consolidated's statutory lien.

The Freidlines do cite *Moyer v. Hezlep*, 123 Kan. 735, 257 Pac. 229 (1927), in which a chattel mortgage given to a bank to secure promissory notes was given priority over subsequently filed labor liens. The court in *Moyer* held that liens created pursuant to 55-207 are given preference only to those liens which attach subsequent to the commencement of labor or the furnishing of supplies. The present case is distinguishable. There is no question that the chattel mortgage in *Moyer* created a valid and enforceable lien which was prior in time to a subsequently filed labor lien. Here, although the lease containing the lien was recorded prior to the filing of Consolidated's lien, the lease provision is not comparable to a chattel mortgage.

A competing lien to be perfected or choate must be definite in the identity of the lienor, the property subject to the lien, and the amount of the lien. *United States v. L.R. Foy Construction Company*, 300 F.2d 207, 210-11 (10th Cir. 1962) (citing *United States v. New Britain*, 347 U.S. 81, 98 L. Ed. 520, 74 S. Ct. 367 [1954]). In the present case, the lease provision is definite only as to the identity of the potential lienors (the Freidlines) and the property potentially subject to the lien (leasehold equipment and fixtures). The lease provision is indefinite as to amount. Until and unless the Freidlines suffer loss or damage under the lease, they have no claim to pursue under the lease provision. Therefore, the Freidlines' equitable lien was not a perfected lien when it was recorded on February 27, 1980.

In addition, the Freidlines' equitable lien was not perfected

prior to Consolidated's statutory lien. Consolidated's first lien was filed on December 16, 1983. The district court found the Freidlines' lien covered damages sustained from 1983 through 1985 and had priority over Consolidated's lien. In their original answer, the Freidlines claimed damages in the amount of $1,007.54 for the unpaid minimum royalty payable in 1983, plus $1,000 for royalties payable in the first two months of 1984. They also claimed $550 for crop damage. The earliest date upon which the Freidlines could assert a claim for a sum certain for loss or damage under the terms of the lease was December 31, 1983, when the unpaid minimum royalty payable for that year was due. Even if we were to assume that the lease provided the Freidlines with an automatic lien upon any loss or damage caused by the lessees, this lien would not arise until December 31, 1983, a date subsequent to the filing of Consolidated's lien. Although the crop damage was also claimed by the Freidlines, the court first had to determine when that damage arose and the amount of that damage. Under 55-207, if the Freidlines' equitable lien attaches subsequent to Consolidated's lien, Consolidated's lien is preferred.

As between Consolidated's prior valid statutory lien and the Freidlines' equitable lien, the statutory lien must be given priority. The Freidlines point to no Kansas authority to support their assertion that a lien provision included in their express contract with their lessees must be given priority when asserted against a prior valid statutory lien. Consolidated relies upon and complied with the clear provisions of K.S.A. 55-207. Its lien must be given priority over a subsequent equitable lien.

Reversed and remanded.