NOT DESIGNATED FOR PUBLICATION

No. 121,839

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Ameriquest Mortgage
Securities Inc., Asset-Backed Pass-Through Certificates, Series 2005-R8,
*Appellee*,

v.

ALBERT C. HINDS AND REBECCA S. HINDS,
*Appellants.*

MEMORANDUM OPINION

Appeal from Linn District Court; TERRI L. JOHNSON, judge. Opinion filed November 13, 2020.
Affirmed.

*Ronald P. Wood*, of Clyde & Wood, L.L.C., of Overland Park, for appellants.

*Charles R. Curran*, of Settle & Pou, P.C., of Dallas, Texas, for appellee.

Before BRUNS, P.J., WARNER, J., and BURGESS, S.J.

PER CURIAM: In this foreclosure action, Albert C. Hinds and Rebecca S. Hinds appeal several decisions made by the district court related to the Deutsche Bank National Trust Company's petition for reformation and mortgage foreclosure. On appeal, the Hindses raise three issues. First, whether the district court erred in striking their designated expert. Second, whether the district court erred in allowing reformation of a partial release. Third, whether the district court erred in granting summary judgment in favor of Deutsche Bank. Finding no reversible error, we affirm the final judgment entered by the district court.

1

The material facts are largely uncontroverted. On July 23, 2005, Albert and Rebecca Hinds executed an adjustable rate promissory note for the principal sum of $225,000 to secure a loan from Ameriquest Mortgage Company. As security for the promissory note, the Hindses also executed a mortgage for real property they owned at 10748 Rice Lane in Pleasanton, Kansas. The mortgage was filed in the Linn County Register of Deeds on August 2, 2005.

About three years later, the Hindses executed a Loan Modification Agreement, in which the terms of repayment and the principal balance owed were revised. On February 11, 2009, the mortgage was assigned to Deutsche Bank National Trust Company as Trustee for Ameriquest Mortgage. Also, it is undisputed that Deutsche Bank holds the promissory note. The assignment was subsequently filed with the Linn County Register of Deeds.

At some point after the Loan Modification Agreement was signed, the Hindses discovered that the legal description in the mortgage that they had executed contained an erroneous legal description. In particular, it described more acreage than the 5 acres the Hindses actually owned. After contacting the lender to inform it of the erroneous legal description, a Partial Release of Mortgage was executed on October 15, 2009, and subsequently recorded in the Linn County Register of Deeds the next day. Although the parties did not initially notice the error, the Partial Release erroneously included the same legal description that was set forth in the mortgage without making an exception for the five-acre tract the Hindses had pledged as collateral for their loan.

According to Albert Hinds, he discovered the error in the Partial Release in 2013. However, he did not bring the error to the attention of anyone at Deutsche Bank or any other entity servicing the loan. It is undisputed that the Hindses stopped making payments

on the loan in July 2013. Albert Hinds testified in his deposition given in this case that he ceased making payments because he had discovered the error in the Partial Release while researching his mortgage.

In October 2013, the Hindses submitted a Hardship Affidavit to Ocwen Loan Servicing, LCC—which was servicing the loan at the time. In the affidavit, the Hindses requested relief from the indebtedness secured by their property located at 10748 Rice Lane, Pleasanton, Kansas. However, the Hindses did not mention the error in the Partial Release in the affidavit.

On October 13, 2016, Deutsche Bank filed a foreclosure petition in Linn County, Kansas. The Hindses originally filed a pro se answer to the petition and asserted a counterclaim for fraud as well as slander of title. A few months later, Deutsche Bank served written discovery on the Hindses. Because the Hindses failed to respond to the bank's discovery requests, the district court entered a journal entry finding each of Deutsche Bank's requests for admission to be deemed admitted.

Subsequently, the Hindses filed a Designation of Expert Witness in which they identified Michael Carrigan of Certified Forensic Loan Auditors, LLC, in Los Angeles, California, to testify. However, the district court granted Deutsche Bank's motion to strike Carrigan as an expert witness and granted the bank leave to file an amended petition. Shortly thereafter, Deutsche Bank filed an Amended Petition in which it added a claim asking the district court to find an equitable lien on the 5-acre tract located at 10748 Rice Lane in Pleasanton, Kansas and to allow foreclosure on the Note.

Thereafter, on July 30, 2019, the district court granted Deutsche Bank's motion for summary judgment in a 17-page memorandum decision. In so doing, the district court concluded that the Hindses were estopped from asserting a statute of limitations defense to prevent reformation of the Partial Release. The district court also found, in the

alternative, that Deutsche Bank holds an equitable lien on the real property based on "the clear intention of the parties to create a mortgage on the five acres of land and the debt the Mortgage was intended to secure has not been satisfied." Ultimately, the district court concluded that the Hindses were in default on the promissory note, that Deutsche Bank was entitled to a monetary judgment for the outstanding balance on the note, and that the bank is entitled to foreclosure. Thereafter, the Hindses timely appealed.

ANALYSIS

The Hindses raise three issues on appeal. First, whether the district court erred by striking the testimony of the Hindses' expert witness. Second, whether the district court erred by applying equitable estoppel to toll the statute of limitations or by granting Deutsche Bank's requested reformation of the Partial Release after the statute of limitations had run. Third, whether the district court erred by granting summary judgment in favor of Deutsche Bank on the issue of foreclosure. Based on our review of the record, we find no errors by the district court.

*Expert Witness Testimony*

The first issue raised by the Hindses on appeal is whether the district court erred in striking their expert witness pursuant to K.S.A. 2019 Supp. 60-456(b). "A district court's admission of expert testimony is generally reviewed for an abuse of discretion. *In re Care & Treatment of Girard*, 296 Kan. 372, 376, 294 P.3d 236 (2013)." *In re Care & Treatment of Cone*, 309 Kan. 321, 325, 435 P.3d 45 (2019). Judicial action constitutes an abuse of discretion if the action is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *Smart v. BNSF Railway Co.*, 52 Kan. App. 2d 486, 494, 369 P.3d 966 (2016). Moreover, the proponents of expert testimony—in this case the Hindses—bear the burden of showing that the testimony was admissible under K.S.A. 2019 Supp. 60-456(b). *State v. Lyman*, 311 Kan. 1, 23, 455 P.3d 393 (2020).

4

As the district court correctly noted, K.S.A. 2019 Supp. 60-456(b) provides:

"If scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, a witness who is qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise if: (1) The testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has reliably applied the principles and methods to the facts of the case."

As the Kansas Supreme Court has found, K.S.A. 2019 Supp. 60-456(b) is "substantively identical" to Federal Rule of Evidence 702, and is consistent with the holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). See *Lyman*, 311 Kan. at 21 (citing *Cone*, 309 Kan. at 325). In *Cone*, our Supreme Court recognized that under *Daubert*, the district court performs "a gatekeeping obligation to ensure that scientific evidence is relevant and scientifically reliable. 509 U.S. at 589." *Cone*, 309 Kan. at 327. Here, we find that the district court reasonably performed its gatekeeping function.

In *Daubert*, the United States Supreme Court listed several nonexclusive factors that a district court could consider when fulfilling its gatekeeping role. These factors include (1) whether the theory or technique can or has been tested; (2) whether the theory or technique has been subject to peer review; (3) whether the theory or technique is subject to or is potentially subject to a high rate of error and whether there are control standards; and (4) whether the theory or technique has general acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 592-94; see *Cone*, 309 Kan. at 328-32. The district court's gatekeeping function applies to all expert testimony and not simply to scientific testimony. See *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-52, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) ("The trial court must have the same kind of latitude in deciding how to test an expert's reliability . . . as it enjoys when it decides whether or not that expert's relevant testimony is reliable."); see *Cone*, 309 Kan. at 327.

5

In Defendants' Designation of Expert Witness, the opinions of Carrigan were identified as:

"1. The Note signed by Albert C. Hinds and Rebecca S. Hinds was split apart or fractionalized, as separate accounting entries and deposited separately into classes. The Note is seventeen (17) classes of the American Mortgage Securities, Inc., Asset-Backed Pass Through Certificates and *there is no proof the Plaintiff has the interest in the loan at this time.*

"2. *The Plaintiff does not own the Mortgage and the Note and therefore there cannot be any legal enforcement of the Note.* The Mortgage needs to be with the Note in order to foreclose on the property. *The Note and Mortgage in this case has different owners and there cannot be a valid foreclosure on the homeowner's property based upon the present documentation.*" (Emphases added.)

In addition, Carrigan submitted a Property Securitization Analysis Report in which he suggested Deutsche Bank is not a real party of interest and cannot foreclose on the Note through the Mortgage. Specifically, Carrigan opined that "[o]nce a loan has been securitized, which the aforementioned loan may have been done many times, that event would indicate that the loan forever loses its security component (i.e. the Mortgage), and *the right to foreclose through the Mortgage is forever lost.*" (Emphasis added.) Carrigan's curriculum vitae was also attached to the designation filed by the Hindses.

In reaching its decision to strike Carrigan as an expert in this foreclosure action, the district court relied on K.S.A. 2019 Supp. 60-456(b), which requires "the district court to make two fundamental decisions:  (1) whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion; and (2) whether the proposed expert testimony is reliable and relevant, in that it will assist the trier of fact." *Smart*, 52 Kan. App. 2d 486, Syl. ¶ 7; see *Lyman*, 311 Kan. at 23. Here, the district court primarily relied on the second factor in determining that Carrigan's opinions were unreliable and not based on reliable principles or methods.

6

Specifically, the district court found:

> "[Deutsche Bank] has raised a number of concerns regarding the expert's qualifications and report. First, it cites numerous courts that have rejected forensic loan audits and affidavits prepared by [the Hindses'] expert Michael Carrigan or his company. The Court has reviewed those cases as well as the consumer fraud alerts . . . as well as the report of Michael D. Carrigan . . . . Based on the Court's review of the report as well as the cases cited by [Deutsche Bank] the Court cannot find that Mr. Carrigan's report and opinion are reliable and based on reliable principles or methods. Numerous courts have found just the opposite. Additionally, [Deutsche Bank] is correct that the report seems to be, at best, a compilation of various excerpts from various documents."

Tellingly, the Hindses offer no argument to refute this part of the district court's ruling. Moreover, as the district court noted, several courts around the country have found Carrigan's opinions to be unreliable. In particular, courts have found Carrigan's reports to be "conclusory," "dubious," "speculative" and "unintelligible." See, e.g., *Clark v. Ocwen Loan Servicing*, No. 1:17-cv-03027-TCB-AJB, 2018 WL 1804349, at *2 (N.D. Ga. 2018) (unpublished opinion) (finding Carrigan's opinion to be conclusory and unintelligible); *Davis v. Select Portfolio Servicing, Inc.*, No. 1:17-CV-02359-CC-JCF, 2017 WL 8186844, at *3 (N.D. Ga. 2017) (unpublished opinion) (noting that securitization audits, such as those prepared by Carrigan, are to be "viewed skeptically" and are created by "charlatans who prey upon people in [an] economically dire situation"); *Leadbeater v. JP Morgan Chase, N.A.*, No. 16-7655 (JMV), 2017 WL 4790384, at *4 n.9 (D.N.J. 2017) (unpublished opinion) (calling forensic mortgage loan audits, such as those prepared by Carrigan's company, "dubious" and providing links to the Federal Trade Commission website wherein such audits are described as "the latest foreclosure rescue scam"); *Barrionuevo v. Chase Bank, N.A.,* No. C-12-0572 EMC, 2013 WL 4103606, at *2-3 (N.D. Cal. 2013) (unpublished opinion) (finding Carrigan's opinion—that a loan was securitized—to be based on insufficient facts and speculative).

In particular, we find the opinion of the United States Court of Appeals for the Third Circuit in *Gilarmo v. U.S. Bank NA as Trustee for CSAB Mortg. Backed Trust 2006-1*, 643 Fed. Appx. 97, 99-101 (3d Cir. 2016) (unpublished opinion), to be instructive. In *Gilarmo*, the Third Circuit upheld a district court's decision rejecting a report by Carrigan's company which made identical conclusions to those in this case. In doing so, the Third Circuit found that "the overwhelming majority of courts" have held that "a borrower in default has no standing to challenge an assignment said to violate a pooling service agreement." 643 Fed. Appx. at 100. Specifically, the *Gilarmo* court held, in relevant part, as follows:

> "When measured against this overwhelming legal precedent, we are not persuaded that [a plaintiff] may challenge [a bank's] standing based on alleged non-compliance with the documents governing the trust. [The plaintiff] is not a party to the [Pooling Service Agreement (PSA)] nor a third-party beneficiary of the PSA, and [the plaintiff's] injuries are hypothetical. [The plaintiff] admits that she took out the loan, that she is in default, and she does not argue that she ever paid more than the amount due on her loan, or that she received a bill or demand from any entity other than the defendants. She does not allege that the allegedly improper transfer interfered with her ability to pay the Note, or that the original lender would have refrained from foreclosure under the circumstances. It seems plain enough here that the allegedly improper assignment merely substituted one creditor for another, without changing her obligations under the Note." 643 Fed. Appx. at 100-01.

See also *Kling v. Bank of America, N.A.*, No. CV 13-2648 DSF (CWx), 2014 WL 12567788, at *1-2 (C.D. Cal. 2014) (unpublished opinion) (concluding that a similar report prepared by Carrigan's company could not be "accurately and readily determined from sources whose accuracy cannot be reasonably questioned," and, after characterizing the report as "a purely legal claim," granting summary judgment for the bank on the issue of foreclosure); *Kuxhausen v. Tillman Partner*, 40 Kan. App. 2d 930, 944, 197 P.3d 859 (2008) (quoting *Olathe Mfg., Inc. v. Browning Mfg.*, 259 Kan. 735, 767, 915 P.2d 86

8

[1996]) ("[E]xpert testimony must be based on reasonably accurate data and not simply based on unsupported assumption, theoretical speculation, or conclusory allegations.").

In addition, as the district court noted, Carrigan and his company have been the subject of several consumer fraud alerts. For example, the United States District Court for the Western District of Missouri noted:

> "[C]ourts across the country have described the [Certified Forensic Loan Auditors, LLC] as likely 'charlatans who prey upon people in economically dire circumstances.' *In re Norwood*, No. 10-84443-PWB, 2010 WL 4642447, 2010 Bankr. LEXIS 3811 (N.D. Ga. Oct. 21, 2010); see also *Demilio v. Citizens Home Loan, Inc.*, No. 3:12-CV-81(CAR), 2013 WL 331211 (M.D. Ga. Jan. 29, 2013) (noting that the Federal Trade Commission had issued a consumer fraud alert regarding 'Forensic Loan Audits' such as those prepared by [Certified Forensic Loan Auditors, LLC], and 'the Court will not, in good conscience, consider any facts recited by such a questionable authority'). This Court is similarly unimpressed by the audit's ostentatious babblings used in an attempt to magically erase debt. Additionally, after the report was prepared for Plaintiff, the auditor, Michael Carrigan, was permanently banned by a federal court, in an enforcement action brought by the Consumer Financial Protection Bureau, from offering mortgage assistance relief services or consumer financial products. *Bureau of Consumer Fin. Prot. v. Certified Forensic Loan Auditors, LLC*, No. 2:19-cv-07722-ODW (C.D. Cal. Oct. 29, 2019) (stipulated final judgment on as to Michael Carrigan)." *Ponce v. Broker Sols., Inc.*, No. 6:20-03052-CV-RK, 2020 WL 4812699, at *4 n.5 (W.D. Mo. 2020).

See *Bureau of Consumer Fin. Prot. v. Certified Forensic Loan Auditors*, No. 2:19-CV-07722-ODW (JEMx), 2020 WL 2556417, at *1 n.1 (C.D. Cal. 2020) ("The Bureau's FAC also named Defendant Michael Carrigan, but . . . Carrigan stipulated to entry of final judgment against Carrigan on October 29, 2019.").

Based on these cases from other jurisdictions which have considered the reliability of similar reports prepared by Carrigan and those affiliated with Certified Forensic Loan Auditors, LLC, we find the district court's decision in this case to be reasonable. At best,

Carrigan's qualifications are questionable in light of the above, but it is not necessary for us to determine whether he is qualified to serve as an expert because the district court appropriately found that his opinions are neither reliable nor relevant to the issue presented in this case. In fact, Carrigan is basically attempting to render legal opinions that are inconsistent with Kansas law.

As the district court explained:

"Ultimately, Carrigan is attacking [Deutsche Bank's] standing to bring suit claiming that the mortgage and note have different owners however fails to acknowledge in Kansas a plaintiff has standing to bring suit if plaintiff is the holder of the note. See *FV-1 Inc v. Kallevig*, 306 Kan. 204 (2017). That is the relevant issue. [Deutsche Bank] has alleged that it is the holder of the original note, endorsed in blank. The Court agrees with [Deutsche Bank] that the holder of a blank endorsed note is entitled to enforce it. *Id.* As such, whether portions of the note [have] been sold or split apart is not relevant to the Court's inquiry if [Deutsche Bank] is in possession of original note, endorsed in blank and therefore entitled to bring suit. As such Mr. Carrigan's testimony and report would not be helpful to the Court . . . ."

Indeed, in *FV-1, Inc. for Morgan Stanley Mortgage Capital Holdings v. Kallevig*, 306 Kan. 204, 214, 392 P.3d 1248 (2017), "a 'holder of a promissory note has standing to enforce the terms of the indebtedness, including the right to foreclose on a mortgage that secures it.'" To establish standing, a plaintiff in a mortgage foreclosure action must show "(1) that the note was made payable to [the plaintiff] or was endorsed in blank and (2) [the plaintiff] was in possession of the note" when it filed the foreclosure action. 306 Kan. at 215. Accordingly, the district court correctly found that "whether portions of the note had been sold or split apart is not relevant to the Court's inquiry if plaintiff is in possession of the original note, endorsed in blank and therefore entitled to bring suit."

Here, it is undisputed that Deutsche Bank held the Note at the time this action was filed. In fact, the Bank attached a copy of the Note both to its Petition and to its request

for admissions. Also, as a result of their failure to respond to Deutsche Bank's request for admissions, the district court found that the Hindses had admitted that the Note attached as Exhibit A "is a true and accurate copy of the Adjustable Rate Note signed by you in July 2005." Similarly, in their response to the motion for summary judgment, the Hindses did not controvert the bank's statement of uncontroverted facts in paragraph No. 20, which stated:

> "20. The Mortgage has been assigned to [Deutsche Bank] by an assignment recorded on February 23, 2009 in Book 405 at Page 127 in the office of the Register of Deeds for Linn County and [Deutsche Bank] is the holder of the Note and Mortgage and has authority to enforce the terms of said instruments in this proceeding."

In sum, the district court did not need a purported expert to assist it in determining whether Deutsche Bank had standing to bring this foreclosure action as a matter of Kansas law. As such, we find the district court's conclusion that "Carrigan's testimony and report would not be helpful" to be reasonable. Although the Hindses contend that the district court failed to make an "attempt to understand the report of Michael D. Carrigan," we find that the district court's order striking Carrigan as a witness reflects a thorough understanding of the type of speculative and conclusory opinions that he sought to render in this case.

We note that the Hindses also argue that the district court did not "make a decision as to whether the expert was qualified by knowledge, skill, experience, training or education. . . ." However, under K.S.A. 2019 Supp. 60-456(b), the rule for establishing admissibility of an expert witness' testimony is a conjunctive test, requiring that each prong of the analysis—including the proposed expert's qualification as well as the reliability and relevance of the proposed testimony—be met. Notably in this regard, several federal courts have similarly held that the test for determining the admissibility of expert testimony is conjunctive. See *Lyman*, 311 Kan. at 21 ("[W]e have held other federal caselaw interpreting Federal Rules of Evidence can be persuasive.").

11

Specifically, some of the federal cases that have found the rules relating to the admissibility of expert testimony to involve a conjunctive test include: *Harrison v. Royal Caribbean Cruises, Ltd*., No. 1:12-cv-24111-UU, 2013 WL 11316997, at *1 (S.D. Fl. 2013) (unpublished opinion) ("The U.S. Court of Appeals for the Eleventh Circuit has established a three-part conjunctive test to determine whether expert testimony should be admitted under *Daubert*."); and *Howell v. CSX Transp. Inc*., No. 2:11-CV-079JD, 2013 WL 1149599, at *6 (N.D. Ind. 2013) (unpublished opinion) (noting that Federal Rule of Evidence 702 is a "conjunctive test" requiring expert testimony to meet all requirements to be admissible). See Masakayan, *The Unconscious Discrimination Paradox: How Expanding Title VII to Incorporate Implicit Bias Cannot Solve the Issues Posed by Unconscious Discrimination*, 25 Geo. Mason L. Rev. 246, 271 (Fall 2017) (describing the factors of *Daubert* and Federal Rule of Evidence 702 as a conjunctive test requiring that all factors be proven to establish admissibility of an expert opinion).

Consequently, we find that the district court did not err in its analysis, and we conclude that the district court appropriately acted within its discretion in striking Carrigan as a witness pursuant to K.S.A. 2019 Supp. 60-456(b).

*Reformation of the Partial Release*

Next, the Hindses contend that the district court erred in granting summary judgment to Deutsche Bank to allow reformation of the Partial Release after the statute of limitations had run. Specifically, the district court found that "there is no question that both parties intended to encumber the five acres of land as a security interest as a condition of the money the [Hindses] borrowed." Likewise, the district court found that the Hindses "received a copy of the Partial Release, that they did not notify [Deutsche Bank] of the error, that they continued to pay on the loan, and that at the time the suit was filed, that the Hindses had not satisfied the debt. . . ." As a result, the district court

12

granted Deutsche Bank's request to reform the legal description of the encumbered real property consistent with the uncontroverted facts.

The standard for granting summary judgment—whether completely or partially—is governed by K.S.A. 2019 Supp. 60-256. "A party against whom relief is sought may move, with or without supporting affidavits or supporting declarations . . . for summary judgment on all or part of the claim." K.S.A. 2019 Supp. 60-256(b). "[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must, by affidavits or by declarations pursuant to K.S.A. 53-601 . . . or as otherwise provided in this section, set out specific facts showing a genuine issue for trial." K.S.A. 2019 Supp. 60-256(e)(2).

The Kansas Supreme Court has explained the rules relating to summary judgment as follows:

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.' [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

On appeal, we review the district court's ruling on a motion for summary judgment de novo. In doing so, we view the facts offered in support and opposition to the motion in the light most favorable to the party opposing summary judgment. *Becker v. The Bar Plan Mutual Insurance Co.*, 308 Kan. 1307, 1311, 429 P.3d 212 (2018). Although the party opposing summary judgment need not prove its case, it does have an "affirmative

13

duty to come forward with facts to support its claim." *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 520, 856 P.2d 1313 (1993). An issue of fact is not genuine or material in ruling on a summary judgment motion unless it has legal controlling force as to the claims or defenses at issue in the motion. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013).

It is undisputed that the Partial Release errantly described the property encumbered by the Loan Modification Agreement by releasing the five-acre tract of land that the Hindses had used as collateral to obtain the loan. It is also undisputed that the statute of limitations for reforming the Partial Release ran on October 16, 2014, which was five years after the Partial Release was recorded. See K.S.A. 60-511(1); see also *Law v. Law Company Building Assocs.*, 295 Kan. 551, 574, 289 P.3d 1066 (2012) ("[A] cause of action for reformation of a contract based on mutual mistake accrues on the date of mistake, not the date of discovery of the mistake."). Further, it is undisputed that Deutsche Bank filed its petition to reform the Partial Release on October 13, 2016.

Nevertheless, Deutsche Bank contends that the district court appropriately applied the doctrine of equitable estoppel to prevent the Hindses from using the statute of limitations as an affirmative defense in this case. Kansas courts have found that a party may be equitably estopped from using the statute of limitations as a procedural bar where that party "has acted in such a fashion that his [or her] conduct is sufficient to lull his adversary into a false sense of security. . . .'" *Ferrell v. Ferrell*, 11 Kan. App. 2d 228, 230, 719 P.2d 1 (1986); see also *Chamberlain v. Schmidt,* No. 112,667, 2016 WL 563003, at *9 (Kan. App. 2016) (unpublished opinion) (affirming a district court decision that a mutual mistake justified the application of equitable estoppel to toll statute of limitations for reformation). "The principle underlying the doctrine is that a person will be held to a representation made or a position assumed when otherwise inequitable consequences would result to another who, having a right to do so under all of the

14

circumstances, has in good faith relied thereon." *Coffey v. Stephens*, 3 Kan. App. 2d 596, 597, 599 P.2d 310 (1979).

In *Mutual Life Ins. Co. of New York v. Bernasek*, 235 Kan. 726, 730, 682 P.2d 667 (1984), the Kansas Supreme Court explained:

> "'A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.' [Citation omitted.]"

Equitable estoppel requires that the party asserting it show that: (1) it was induced to believe certain facts existed by another party's acts, representations, admissions, or silence when the other party had a duty to speak; (2) it relied and acted upon such belief; and (3) it would now be prejudiced if the other party were allowed to deny the existence of such facts. *Fleetwood Enterprises v. Coleman Co.*, 37 Kan. App. 2d 850, 865, 161 P.3d 765 (2007). In other words, "a defendant, who has acted in such a fashion that his conduct is sufficient to lull his adversary into a false sense of security forestalling the filing of suit until after the statute has run, will be precluded from relying on the bar of the statute. [Citations omitted.]" *Coffey*, 3 Kan. App. 2d at 598.

A review of the record confirms that the Hindses had actual knowledge of the error in the Partial Release at some point in 2013—which was prior to the expiration of the five-year statute of limitations for reformation—yet said nothing to Deutsche Bank or any entity servicing the loan. Specifically, Albert Hinds testified in his deposition that he became aware of the error in the legal description set forth in the Partial Release in 2013 when he was researching the loan history. Specifically, Mr. Hinds testified after losing his job he "started doing research on my mortgage because I thought I might have to refinance or sell. . . . And when I went to the courthouse and printed off everything on my

15

history of my loan . . . I realized then that the lien had been released." Moreover, in response to Deutsche Bank's summary judgment motion, the Hindses additionally asserted that, instead of bringing the error to the lender's attention, they "ceased making payments on the loan on the basis the Mortgage had been released, the Mortgage had not been reformed, and the statute of limitations had run."

In *Ferrell*, a panel of this court held:

"To invoke the doctrine of equitable estoppel, a party need not have 'planned or contrived with the deliberate intent to lull [the opposing party] into a false sense of security.' Rather, *the mere fact of remaining silent, when possessing material knowledge not held by another, is sufficient to toll the statute where that silence causes another to fail to take timely action which he would have taken had he possessed such knowledge.* [Citation omitted.]" (Emphasis added.) 11 Kan. App. 2d at 234.

Here, the following facts are deemed to be uncontroverted:

- On July 23, 2005, Albert and Rebecca Hinds obtained a loan from Ameriquest Mortgage Company in the principal amount of $225,000, plus interest.
- As collateral for the loan, the parties intended that the Hindses mortgage a 5-acre tract of real property they owned at 10748 Rice Lane, Pleasanton, Kansas.
- The Hindses executed a mortgage that included the real property they owned at 10748 Rice Lane, Pleasanton, Kansas.
- The mortgage was recorded with the Linn County Register of Deeds on August 2, 2005.
- The mortgage executed by the Hindses mistakenly contained a legal description that included not only the 5-acre tract intended to serve as collateral for the loan but also included additional real property, including some that they did not own.

16

- In September 2008, the Hindses executed a Loan Modification Agreement in which the repayment terms and principal balance on the loan were changed.
- Subsequently, the mortgage was assigned to Deutsche Bank and the assignment was recorded with the Linn County Register of Deeds on February 23, 2009.
- At some point in 2009, the Hindses notified the lender of the mistake in the legal description set forth in the mortgage.
- In response, the lender recorded a Partial Release of Mortgage with the Linn County Register of Deeds in October 2009.
- At the time the Partial Release was filed and recorded, the Hindses knew that they had not satisfied the indebtedness and continued to make payments on the loan.
- In 2013, Albert Hinds discovered that the Partial Release mistakenly included the legal description contained in the mortgage without making an exception for the five-acre tract the parties intended to serve as collateral for the loan.
- Notwithstanding this discovery, the Hindses did not notify the lender of the mistake in the legal description set forth in the Partial Release.
- After discovery of the mistake, the Hindses submitted a Hardship Affidavit to the loan servicer in which they requested mortgage assistance for the real property located at 10748 Rice Lane, Pleasanton, Kansas—which had been pledged as security on the loan—because Albert Hinds was unemployed.

Based on the uncontroverted facts as applied to Kansas law, we find that the Hindses had actual knowledge regarding the error in the legal description set forth in the Partial Release in 2013, which was prior to the expiration of the 5-year statute of limitations for reformation. Nevertheless, the Hindses remained silent and failed to disclose this material information to Deutsche Bank or any entity servicing the loan.

17

Furthermore, the Hindses did not present evidence or argument that Deutsche Bank knew of the mistake in the legal description set forth in the Partial Release.

We also find that a reasonable lender would have commenced legal action to reform the Partial Release had it possessed this material information. Accordingly, like the district court, we conclude that the Hindses are equitably estopped from raising the statute of limitations as a defense to the bank's request that the Partial Release be reformed to express the mutual intent of the parties regarding the collateral pledged to secure the loan.

We pause to note that the district court also found that the statute of limitations was tolled in this case based on the Hardship Affidavit submitted by the Hindses after discovering the mistake in the Partial Release. In support, the district court quoted *Dechand Roofing & Supply Co. v. Schumaker*, 174 Kan. 82, Syl. ¶ 2, 254 P.2d 326 (1953), in which the Kansas Supreme Court found that an acknowledgement that is "distinct, unequivocal, and without qualification, and nothing less than a direct admission of a present existing liability is sufficient" to toll the statute of limitations. The district court found that the Hindses' acknowledgement of the mortgage in the Hardship Affidavit "was distinct, unequivocal, and without qualification." As a result, the district court concluded that the Hardship Affidavit presented to the loan servicer in October 2013 "was a direct acknowledgement of the present mortgage" and was sufficient to toll the statute of limitations.

As Deutsche Bank points out, the Hindses did not contest this separate finding by the district court regarding the tolling of the statute of limitations. An issue not briefed by an appellant is considered waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Therefore, because this separate and independent ground for finding that the bank's reformation claim is not barred by the

statute of limitations has not been challenged, we conclude that Deutsche Bank's reformation claim is not barred based on this alternative ground as well.

Next, we turn to the question whether the district court erred in reforming the Partial Release. Reformation is an equitable remedy that provides courts with a tool to reform a written instrument to express the true intention of the parties. However, reformation is an extraordinary remedy and is to be exercised only with great caution. *Evergreen Recycle v. Indiana Lumbermens Mut. Ins. Co.*, 51 Kan. App. 2d 459, 502, 350 P.3d 1091 (2015).

Kansas courts have indicated a reluctance to reform written instruments where there is no evidence of fraud, mistake, duress, undue influence, unconscionability, or unreasonable results. See *Squires v. Woodbury*, 5 Kan. App. 2d 596, 601, 621 P.2d 443 (1980). Further, "[w]hen reformation of a policy is sought on the ground of mistake, and without fraud, it is necessary to establish mutuality of mistake by clear and convincing evidence." *Chamberlain*, 2016 WL 563003, at *10. "Clear and convincing evidence is an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt. Clear and convincing evidence is evidence 'sufficient to establish that the truth of the facts is "highly probable."' [Citations omitted.]" *Chamberlain*, 2016 WL 563003, at *9.

With regard to the issue of reformation, the district court made the following conclusion.

> "What [the Hindses] fail to recognize is that the only reason [Deutsche Bank] made the mistake and issued a Partial Release of the Mortgage was at [the Hindses'] request. Additionally, there is no question that both parties intended to encumber the five acres of land as a security interest as a condition of the money [the Hindses] borrowed. It is also uncontroverted that [the Hindses] received a copy of the Partial Release, that they did not notify [Deutsche Bank] of the error, that they continued to pay on the loan, and

19

that at the time the suit was filed, that [the Hindses] had not satisfied the debt described in the Note, Mortgage, and Modification and money remained due and owing on their loan."

Accordingly, the district court concluded that based on "the uncontroverted facts that the mistake was mutual and common to both parties and did not comply with the intent of the parties." We find the district court's conclusion regarding the parties' mutual mistake to be supported by the uncontroverted facts. We also find that these facts are sufficient to constitute clear and convincing evidence. As indicated above, Albert Hinds candidly admitted in his deposition that he discovered the error in the legal description in 2013. In addition, we note that on its face, the Partial Release of Mortgage clearly reflects that it was intended to *partially* release the mortgage as requested by the Hindses and that it was not intended to release *all* of the mortgaged property. Thus, we affirm the district court's decision to allow the reformation of the Partial Release in order to reflect the mutual intent of the parties regarding the real property to be encumbered.

*Validity of Final Judgment*

Finally, the Hindses contend that the district court erred by granting summary judgment in favor of Deutsche Bank on its claims for relief. "[I]n order to grant summary judgment in a mortgage foreclosure action, the trial court must find undisputed evidence in the record that the defendant signed a promissory note secured by a mortgage, that the plaintiff is the valid holder of the note and the mortgage, and that the defendant has defaulted on the note." *Bank of America, N.A. v. Inda*, 48 Kan. App. 2d 658, 664, 303 P.3d 696 (2013). Here, the district court concluded that Deutsche Bank is the holder of the promissory Note and Mortgage and that the Hindses are in default on the Note. As a result, the district court granted Deutsche Bank's petition for foreclosure and entered a personal judgment against the Hindses for the full amount due and owing on the Note.

Summary judgment requires strict adherence to the statutory requirements set forth in K.S.A. 2019 Supp. 60-256. In addition, Kansas Supreme Court Rule 141(b)(1) (2020

20

Kan. S. Ct. R. 205), requires that a party opposing summary judgment respond to the movant's statements of uncontroverted fact by submitting a list, corresponding in number to the statements of fact submitted by the movant, stating whether each of the movant's factual contentions is (a) uncontroverted, (b) controverted for the purposes of the motion only, or (c) controverted. If an opposing party claims that a fact is controverted, it must "concisely summarize the conflicting testimony or evidence and any additional genuine issues of material fact that preclude summary judgment; and *provide precise references*" *to the record.* (Emphasis added.) Supreme Court Rule 141(b)(1)(C) (2020 Kan. S. Ct. R. 206).

Although the Hindses attempted to controvert some of Deutsche Bank's statements in their response to Deutsche Bank's motion for summary judgment, they did not comply with the requirements of Kansas Supreme Court Rule 141. In particular, the Hindses failed to identify specific facts or provide corresponding record citations to support their argument that foreclosure is not justified. Moreover, as previously discussed, the Hindses failed to respond to the Bank's request for admissions so the facts asserted in the request were properly deemed admitted by the district court. As such, we find that the district court did not err in adopting Deutsche Bank's statement of uncontroverted facts and in granting summary judgment on the issue of foreclosure in the Bank's favor.

In the alternative, Deutsche Bank also asks us to affirm the district court's grant of summary judgment on the ground that it held an equitable lien on the real property in question. The district court also granted this argument in the Bank's favor. Specifically, citing *Beck v. Brooks*, 224 Kan. 300, 580 P.2d 882 (1978), and *Fuqua v. Hanson*, 222 Kan. 653, 567 P.2d 862 (1977), the district court found "[i]t is clear and undisputed that the [Hindses] intended to encumber the five-acre tract of land as collateral to secure repayment of the debt described in the Note and [Loan] Modification." Likewise, the district court found that "it was the clear intention of the parties to create a mortgage on

21

the five acres. . . ." As such, the district court concluded that Deutsche Bank "holds an equitable lien on the property that can be enforced by foreclosure."

Similar to the reaffirmation argument addressed in the previous section of this opinion, the Hindses have not briefed or otherwise challenged the Bank's claim that it was entitled to foreclosure based on its equitable lien theory. As already discussed, an issue not briefed by an appellant is considered waived or abandoned. *Kimball*, 292 Kan. at 889. Consequently, we conclude that Deutsche Bank is also entitled to a judgment of foreclosure on this alternative ground that it held an equitable lien on the 5-acre tract of real property located at 10748 Rice Lane, Pleasanton, Kansas.

In summary, we conclude that the district court appropriately granted summary judgment in favor of Deutsche Bank based on the uncontroverted facts. The Hindses failed to come forward with evidence to establish a genuine issue of material fact relating to the foreclosure of the mortgage or their default on the promissory note. We, therefore, affirm the final judgment entered by the district court.

Affirmed.